UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__SEP 2 8 2017

Patrizia Pelgrift, *et al.*,

                                    Plaintiffs,

                    —v—

335 W. 41st Tavern Inc., *et al.*,

                                    Defendants.

14-CV-8934 (AJN)

MEMORANDUM &
ORDER

ALISON J. NATHAN, District Judge:

Before the Court is a motion for the entry of default judgment.  For the following reasons,

the Court GRANTS the motion IN PART and enters judgment as to Defendants' liability on

certain causes of action.  The Court refers the matter to the Magistrate Judge for an inquest into

damages.

I.      **Background**

Plaintiffs Patrizia Pelgrift, Valeriya Kolisnyk, and Iryna Lutsenko were employed by

Defendants in their bars, Tobacco Road and Dave's Tavern.  On November 10, 2014, Pelgrift

and Kolisnyk filed a complaint against Defendants 335 W. 41st Tavern Inc. and David Sheeran

for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and the New

York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay minimum wage, failure to

pay overtime wages, and failure to pay spread of hours wages.  Complaint, Dkt. No. 1, ¶¶ 175-

205.  All three Plaintiffs also brought the action pursuant to Title VII of the Civil Rights Act of

1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII") and the New York City Human Rights Law,

N.Y.C. Admin. Code §§ 8-107 *et seq.* ("NYCHRL") for sexual harassment, for gender

1

discrimination, for wrongful termination for refusing to submit to Sheeran's sexual demands, and for defamation as a result of their intentions to file a sexual harassment lawsuit. *Id.* ¶¶ 206-14, 222-32. Finally, Pelgrift alone sued for breach of contract for Defendants' failure to pay her event commissions. *Id.* ¶¶ 215-21. Plaintiffs seek damages for lost wages and benefits, compensatory damages for "mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven," punitive damages, liquidated damages for Defendants' "willful failure to pay minimum wage, overtime wages and spread-of-hour wages," attorneys' fees and costs, and other equitable relief. *Id.* at 34.

At various points in this litigation, Defendants have been unresponsive. On August 19, 2015, Plaintiffs submitted a letter detailing some of the early troubles they had communicating with Defendants. Dkt. No. 19. Plaintiffs claimed they had to make "repeated requests for responses" to their First Request for the Production of Documents, First Set of Interrogatories, and Deposition Notices. *Id.* at 1. After more than three months, Defendants responded alleging the existence of no responsive documents. *Id.* Plaintiffs sent Defendants emails to schedule depositions on four separate occasions without response, and depositions did not take place on time. *Id.* Defendants were additionally unresponsive to settlement offers, and cancelled two mediation conferences. *Id.* at 2.

On October 15, 2015, the Court held a status conference – to which Defendants were more than 30 minutes late – during which the Court made it clear to Defendants that Plaintiffs' deposition of Defendant Sheeran was to take place within the next 30 days, and that failure to comply would open them to potential sanctions. Specifically, the Court warned:

> "There will be repercussions either if the deposition doesn't get scheduled or if the deposition doesn't go forward after it's been scheduled. And I want to be very clear…just in light of the history of the case, there won't be allowances in this

2

case.  If it doesn't get scheduled or doesn't go forward, then I will allow a motion
for discovery sanctions, including a motion to strike the answer."
Tr. 9:8-14.

Nonetheless, two hours before Defendant Sheeran was scheduled to be deposed,
Defendants wrote requesting "an extension of time to complete the deposition of the defendant,"
due to Mr. Sheeran's illness. Dkt. No. 35.  The Court did not grant this request.  A court reporter
was already scheduled, and Plaintiffs had taken off time from work to attend.  Dkt. No. 36 at 3.

On November 12, 2015, Plaintiffs again filed a letter with the Court detailing a pattern of
"dilatory and deceptive tactics to delay discovery." *Id.* at 1-2.  The letter presented the above
events, offered other instances of various last-minute cancellations and late appearances at
conferences, and ultimately asked the Court for sanctions pursuant to Rule 37 of the Federal
Rules of Civil Procedure. *Id.* at 2-3.  Specifically, Plaintiffs asked the Court to strike Defendants'
answer. *Id.* at 6.

In response, on November 19, 2015, the Court issued an order authorizing Plaintiffs to
file a formal motion to strike Defendants' Answer. Dkt. No. 37.  The Court noted that it had
warned Defendants at the October 15, 2015 conference of "repercussions" if the deposition did
not occur. *Id.*  Plaintiffs filed their motion to strike on December 1, 2015, Dkt. Nos. 38-42, which
Defendants opposed. Dkt. Nos. 43-44.

On February 23, 2016, the Court granted Plaintiffs' motion to strike Defendants' Answer
pursuant to Federal Rule of Civil Procedure 37. Dkt. No. 53.  The Court found, in the absence of
any explanation, that Defendant Sheeran's failure to attend his deposition was willful, and that
"the nature of Defendants' defense of this action renders any lesser sanction inadequate here." *Id.*
at 5-6.  The Court further ordered Defendant Sheeran and defense counsel to split the cost to pay

Plaintiffs' reasonable expenses, including attorney's fees, caused by Defendant Sheeran's failure to attend. *Id.* at 6.

Upon striking the Defendants' Answer, Defendants were left in default. *Id.* at 7 (citing *Oscar De La Renta Ltd. v. Strelitz Ltd.*, No. 92-CV-3907(CES), 1993 WL 267341, at *1 (S.D.N.Y. July 12, 1993)). The Court instructed Plaintiffs to seek a certificate of default from the Clerk of Court and then to file for default judgment with the Court. Dkt. No. 54.

Plaintiffs did request, and receive, a certificate of default from the Clerk of Court, Dkt. Nos. 55, 64, however before Plaintiffs had the chance to move for the entry of default judgment, the Court was informed that Defendant Sheeran had filed for bankruptcy. Dkt. No. 61. As required by 11 U.S.C. § 362, the Court then entered a stay of the litigation, requiring Plaintiffs to submit semi-annual status reports. Dkt. No. 65.

In the first status report, submitted on September 29, 2016, Plaintiffs reported that the Honorable Robert D. Drain of the United States Bankruptcy Court for the Southern District of New York, had terminated the automatic stay to permit Plaintiffs' liquidation of claims, and requested that the Court lift the stay.[1] Dkt. No. 66. The Court granted Plaintiffs' request, and invited Plaintiffs to submit a motion for default judgment. Dkt. No. 67.

Plaintiffs filed the present motion for the entry of default judgment on October 20, 2016, Dkt. Nos. 69-70, 72-74, 76, and Defendants filed opposition, Dkt. Nos. 71, 75. On November 16, 2016, Plaintiffs filed a reply in support of their motion for default judgment, completing the briefing for this motion. Plaintiffs' Reply Memorandum of Law in Support of their Motion for Default Judgment ("Reply"), Dkt. No. 77.

---

[1] Judge Drain later dismissed Defendant Sheeran's bankruptcy proceeding. Dkt. No. 78.

## II.   Discussion

### A.   Standard of Review

When entry of a default judgment is opposed, the opposition is treated as a motion to set

aside the entry of a default. *Meehan v. Snow*, 652 F.2d 274, 276 (2d Cir. 1981). Entry of default

is generally disfavored and is considered an "extreme sanction" that "must remain a weapon of

last, rather than first, resort." *Id.* at 277. As a result, any doubt "as to whether a default should be

granted or vacated" should be "resolved in favor of the defaulting party." *Enron Oil Corp. v.

Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). Nonetheless, the party seeking relief from an entry of

default bears the burden of proof. *Aetna Life Ins. Co. v. Licht*, No. 03-CV-6764(PKL), 2004 WL

2389824, at *3 (S.D.N.Y. Oct. 25, 2004) (citation omitted).

Rule 55(c) provides that "[t]he court may set aside an entry of default for good cause."

Fed. R. Civ. P. 55(c). "Because Rule 55(c) does not define the term 'good cause,' the Second

Circuit has established three criteria that must be assessed in order to decide whether to relieve a

party from default or from a default judgment." *Bricklayers & Allied Craftworkers Local 2,

Albany, N.Y. Pension Fund v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 186 (2d Cir.

2015) (per curiam) (alterations omitted) (quoting *Enron Oil Corp.*, 10 F.3d at 96). The three

factors courts consider are: (1) the willfulness of the default; (2) the existence of a meritorious

defense to the defaulted claims; and (3) prejudice to the non-defaulting party should relief be

granted. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 171 (2d Cir. 2001). No one factor is

dispositive. *See Murray Eng'g, P.C. v. Windermere Props. LLC,* No. 12-CV-0052(JPO), 2013

WL 1809637, at *4 (S.D.N.Y. Apr. 30, 2013). While the factors are the same whether it is a

motion to set aside a default or a default judgment, "courts apply the factors more rigorously in

the case of a default judgment…because the concepts of finality and litigation repose are more

deeply implicated in the latter action." *Enron Oil Corp.*, 10 F.3d at 96 (internal citation omitted). In this case, because opposition to this motion renders it equivalent to a motion to vacate default, the Court applies a slightly less stringent standard.

### B.   Entry of Default Judgment Is Warranted

The Court will analyze the three factors in turn.

#### 1.   Defendants' Actions Were Willful

"[W]ilfulness in the context of a judgment by default requires something more than mere negligence, such as egregious or deliberate conduct, although the degree of negligence in precipitating a default is a relevant factor to be considered." *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (internal quotation marks and citations omitted); *see S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (collecting and contrasting cases of willful conduct and mere negligent conduct). Generally, "courts should not set aside a default when it is found to be willful." *Brien v. Kullman Indus., Inc.*, 71 F.3d 1073, 1078 (2d Cir. 1995) (citing *Action S.A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir. 1991), *cert. denied*, 503 U.S. 1006 (1992)).

As detailed above, Defendants' conduct throughout this litigation has been abysmal. The behavior of defense counsel rises above mere negligence, and is more properly characterized as "egregious." Early on, Defendants were unresponsive to Plaintiffs' first requests for production, first set of interrogatories, and deposition notices. Dkt. No. 19. After more than three months, Defendants finally responded alleging that there were no responsive documents. *Id.* Defendants failed to respond to multiple entreaties from Plaintiffs to schedule depositions. *Id.* Months later, when the deposition of Defendant Sheeran still had not yet occurred, the Court held a status conference during which the Court made it clear to Defendants that the deposition of Sheeran was to take place within the next 30 days. Specifically, the Court warned:

"There will be repercussions either if the deposition doesn't get scheduled or if the deposition doesn't go forward after it's been scheduled. And I want to be very clear…just in light of the history of the case, there won't be allowances in this case. If it doesn't get scheduled or doesn't go forward, then I will allow a motion for discovery sanctions, including a motion to strike the answer."

Tr. 9:8-14.

Despite being placed on notice of the likelihood of sanctions for noncompliance, Defendants requested an extension of time a mere two hours before the scheduled deposition. Dkt. No. 35. In *Sieck v. Russo*, the Second Circuit upheld the district court's denial of Defendants' motion to set aside default judgment, the entry of which resulted from Defendants' failure to appear at scheduled depositions. 869 F.2d 131, 134-35 (1989). Defendants here displayed a similar disregard for the Court's orders. Moreover, even outside of the discovery context, Defendants displayed a contempt for the time of the Court and for Plaintiffs, cancelling multiple mediation conferences and showing up late for a status conference. Dkt. No. 19 at 2.

Defendants' full defense of their actions in this litigation is comprised of two paragraphs in their opposition brief. Defendants' Affirmation in Opposition to Plaintiffs' Motion for Default Judgment ("Opp."), Dkt. No. 71, ¶¶ 10-11. Defendants cite two cases in which the Second Circuit found willfulness when counsel, among other things, failed to appear at proceedings. *Id.* ¶ 11 (citing *Dominguez v. United States*, 583 F.2d 615 (2d Cir. 1978) and *Elgard Corp. v. Brennan Constr. Co.*, 248 F. App'x 220 (2d Cir. 2007) (unpublished summary order)). Defendants then use these examples to distinguish and minimize their own conduct, which did not include failure to appear at a conference. *Id.* ¶ 10. The argument Defendants appear to make – that because of this distinction, the Court should not find their conduct willful – is unpersuasive. Failure to appear is not a prerequisite to a finding of willfulness.

For these reasons, others described above, and those in Plaintiffs' submissions of August 19, 2015, November 12, 2015, and October 20, 2016, Dkt Nos. 19, 36, & 69, the Court finds that Defendants' conduct was willful.

### 2.    Defendants Fail To Present Any Meritorious Defenses

Having concluded that Defendants' conduct was willful, the Court proceeds to consider the second factor in weighing whether to relieve Defendants of their default – whether a meritorious defense to the defaulted claims exists. *Pecarsky*, 249 F.3d at 171.  To demonstrate a sufficiently meritorious defense, "the defendant need not establish his defense conclusively, but he must present evidence of facts that, if proven at trial, would constitute a complete defense." *Aetna Life Ins. Co.*, 2004 WL 2389824 at *4 (quotation marks and internal citation omitted). Although the proffered defense "need not be ultimately persuasive at this stage," *Am. Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996), defendants "cannot simply assert in a conclusory fashion that they would prevail at trial." *Aetna Life Ins. Co.*, 2004 WL 2389824 at *4.  Rather, they must "articulate a defense with a degree of specificity which directly relates that defense to the allegations set forth in the plaintiff's pleadings and raises a 'serious question' as to the validity of those allegations." *DeCurtis v. Upward Bound Int'l, Inc.*, No. 09-CV-5378(RJS), 2012 WL 4561127, at *8 (quoting *Salomon v. 1498 Third Realty Corp.*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)).  In the more stringent context of Rule 60(b), some courts have gone so far as to find that "without a valid defense there is no point in setting aside the default judgment." *New York v. Green*, No. 01-CV-196A, 2004 WL 1375555, *7 (W.D.N.Y. June 18, 2004) (quotation marks and citation omitted), *aff'd as modified*, 420 F.3d 99 (2d Cir. 2005).

Defendants make two arguments; the Court finds that neither raises a serious question about the validity of the allegations nor constitutes a complete defense.

### a. Failure to Properly Name Defendants

First, Defendants argue that Plaintiffs "failed to name the proper entities that they wish to recover from." Opp. ¶ 17.  Defendants fault Plaintiffs for solely naming 355 W. 41st Street Tavern, Inc., even though Defendants claim that the parent company for Dave's Tavern is 574 9th Ave Rest Corp. *Id.*  As proof, they provide a printout from the New York State Liquor Authority. Ex. A.  This does not constitute a meritorious defense.

Even assuming *arguendo* that Defendants are correct that Dave's Tavern is operated by a separate parent company not named in this suit, were this case to proceed to trial, this would not establish a "complete defense."  The Court would allow Plaintiffs to amend the complaint pursuant to the Supreme Court decision in *Krupski v. Costa Crociere S.p.A.*  560 U.S. 538 (2010).  In *Krupski*, the Court held that where the proper corporate defendant had "constructive notice" and "should have known that [Plaintiff's] failure to name it as a defendant in her original complaint was due to a mistake concerning the proper party's identity," the Court must grant leave to amend under Rule 15(c)(1)(C). *Id.* at 553-556; *see also Archibald v. City of Hartford*, 274 F.R.D. 371 (D. Conn. 2011) (holding that defendants' constructive notice merited relation back).  Here, it is beyond dispute that this separate entity had constructive notice of the lawsuit. Both bars, and their respective corporate entities, are owned by Defendant Dave Sheeran, who is properly named.  Dave's Tavern – the "doing business as" name used by 574 9th Ave Rest Corp. – is mentioned throughout the complaint. *See, e.g.*, Compl. ¶¶ 11, 51, 92, 102, 119.  This eleventh-hour, post-discovery assertion – which Defendants also did not raise in response to the Court's order that the parties "meet and confer" to clarify the name of the named corporate defendant, Dkt. Nos., 58-60 – is insufficient.  Because the practical consequence of Defendants' argument would only be that Plaintiffs would amend their complaint to add the proper second

corporate defendant, Defendants' fail to raise a "'serious question' as to the validity of [Plaintiffs'] allegations." *DeCurtis*, 2012 WL 4561127, at \*8 (quoting *Salomon*, 148 F.R.D. at 130).

### b.  Subject Matter Jurisdiction

Defendants offer a second defense: that the Court does not have subject matter jurisdiction over Plaintiffs' claims at issue. Opp. ¶¶ 19-30.  This defense is also insufficient.

Defendants assert that Plaintiffs "have not alleged any causes of action under federal law based on sexual harassment," and so insist that the Court "must assess the connection between their federal-law claims, which relate solely to wage-related claims, and their claims based on sexual harassment under state and municipal law." *Id.* ¶ 23.  Defendants then proceed to argue that as Plaintiffs' sexual harassment-related claims do not "share a common nucleus of operative fact" as Plaintiffs' wage-related claims, the Court should decline the exercise of supplemental jurisdiction. *Id.* ¶¶ 27, 29.

Defendants' argument neglects that all three Plaintiffs bring claims under Title VII, a federal law. *See* Compl. ¶¶ 226-32.  Given that Plaintiffs' NYCHRL claims arise from the same facts and rely on the same evidence as Plaintiffs' Title VII claims, the Court's exercise of supplemental jurisdiction is proper.  Thus, Defendants' second purported defense also fails to raise any serious question as to the validity of Plaintiffs' allegations.

### 3.    Although Prejudice Is Not Severe, Default Judgment Is Still Appropriate

The final factor considers whether and to what extent vacating the default against Defendants would unfairly prejudice Plaintiffs.  The Second Circuit has acknowledged that "the basic purpose of default judgment is to protect parties from undue delay-harassment." *Am. Alliance*, 92 F.3d at 61 (internal quotation marks and citation omitted).  Nonetheless, to establish

prejudice, something more than the costs and delays inherent in prosecuting civil litigation is required. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). Delay might result in unfair prejudice if, for example, it thwarts the plaintiff's recovery, results in the loss of evidence, increases the difficulties of discovery, or provides greater opportunity for fraud and collusion. *Green*, 420 F.3d at 110 (quotation marks and citation omitted).

Plaintiffs argue that Defendants' conduct "created a loss of evidence and increased difficulties of discovery for Plaintiff." Reply at 4. The only support they offer for this conclusory statement is that if the Court were to reopen discovery for depositions, "the testimony of the witnesses will be severely affected given the significant amount of time that has elapsed." *Id.* While Plaintiffs are correct that witnesses' memories of the operative events may have faded over time, this does not amount to severe prejudice. The prejudice largely consists of delay and costs, and any potential loss of evidence is speculative at best.

Nonetheless, while the prejudice to Plaintiffs of vacating the default would not be severe, that does not necessitate vacation. The three factors are "not to be applied as a strict mathematical formula," *Saunders v. Morton*, 269 F.R.D. 387, 405 (D. Vt. 2010), and an absence of prejudice to the nondefaulting party does not "in itself entitle the defaulting party to relief from judgment." *McNulty*, 137 F.3d at 738. The Second Circuit has declined to even reach this third factor in cases in which they found that default was willful and were unpersuaded that the defaulting party had a meritorious defense. *See Bricklayers & Allied Craftworkers*, 779 F.3d at 187; *McNulty*, 137 F.3d at 738. Courts "'have an interest in expediting litigation, [and] abuses of process may be prevented by enforcing those defaults that arise from egregious or deliberate conduct.'" *McNulty*, 137 F.3d at 738 (quoting *Am. Alliance*, 92 F.3d at 61) (alteration in

original).  In light of the clear willfulness of Defendants' conduct and lack of meritorious
defenses, the Court still finds that entry of default judgment is warranted.

### C.     Liability

Once the court determines that these factors favor the entry of default judgment, the court
must also consider whether the plaintiff has pleaded facts sufficient to establish the defendant's
liability with respect to each cause of action. *See Gunawan v. Sake Sushi Restaurant*, 897 F.
Supp. 2d 76, 83 (E.D.N.Y. 2012) ("[A] defendant's default does no more than concede the
complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those
uncontroverted allegations, without more, establish the defendant's liability on each asserted
cause of action.") (citations omitted)).  After default, and on a default judgment motion, the
defendant is deemed to have admitted all of the well-pleaded factual allegations contained in the
complaint, except for claims relating to damages. *City of New York v. Mickalis Pawn Shop, LLC*,
645 F.3d 114, 137 (2d Cir. 2011); *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).
However, the plaintiff still bears the burden of showing that he is entitled to recovery as a matter
of law. *See Danser v. Bagir Int'l*, 571 F. App'x 54, 55 (2d Cir. 2014) (summary order); *Mickalis*,
645 F.3d at 137; *Finkel*, 577 F.3d at 84.

### 1.     Fair Labor Standards Act & New York Labor Law

Plaintiffs Pelgrift and Kolisnyk allege violations of the FLSA's minimum wage provision
and overtime provision, 29 U.S.C. §§ 206-07. Compl. ¶¶ 177, 183.  They also plead violations of
the NYLL's minimum wage and overtime provisions, NYLL §§ 170, 652(1). *Id.* ¶¶ 189, 196.
Finally, Pelgrift and Kolisnyk plead violations of the NYLL's "spread of hours" wage provision,
N.Y. Comp. Codes R. & Regs. Tit. 12 § 142-2.18. *Id.* ¶ 203.

To establish a claim under the FLSA, the plaintiff must first show that "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Jiaren Wei v. Lingtou Zhengs Corp.*, No. 13-CV-5164, 2015 WL 739943(FB)(CLP), *5 (E.D.N.Y. Feb. 20, 2005). Plaintiffs adequately allege all three prongs. First, Plaintiffs have alleged that the bars are enterprises engaged in commerce that have done "not less than $500,000" in business. 29 U.S.C. § 203(s)(1)(A)(i)-(ii); Compl. ¶¶ 11, 22, 24; *see Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (S.D.N.Y. 2015) (finding a complaint merely restating the statutory definition sufficient given reasonable inferences). Second, Plaintiffs are employees under the FLSA's definition as "any individual employed by an employer." 29 U.S.C. § 203(e)(1); Compl. ¶ 17-18. Third, Plaintiffs' jobs all constitute non-exempt employment under the FLSA. *See* Compl. ¶¶ 26, 28, 51; *Fermin*, 93 F. Supp. 3d at 32-33 (S.D.N.Y. 2015) (discussing classes of exempt and non-exempt employees).

Plaintiffs also adequately plead Defendant Sheeran's liability as an individual under the FLSA. According to the test the Second Circuit outlined in *Carter v. Dutchess Community College*, there is an employer-employee relationship for FLSA purposes when the individual defendant "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." 735 F.2d 8, 12 (1984) (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). Here, Plaintiffs have alleged that Sheeran was Plaintiffs' supervisor and had supervisory authority over Plaintiffs, including the authority to hire and fire them. Compl. ¶ 19. Additionally, Sheeran had the power

to, and did in fact, establish the terms and conditions of their employment, including their
schedules and rate of pay. *Id.* ¶¶ 18, 20-21, 30. The fourth *Carter* factor is not satisfied here,
because Plaintiffs have alleged that sufficient employment records were not kept. Compl. ¶ 50.
But the lack of support for one *Carter* factor is not fatal to Plaintiffs' claims. *Fermin*, 93 F. Supp.
3d at 36 (citing *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 145 (2d Cir. 2008));
*accord Luna v. Gon Way Constr., Inc.*, No. 16-CV-1411(ARR)(VMS), 2017 WL 835321 at *7-8
(E.D.N.Y. Feb. 14, 2017).

　　Under the New York Labor Law, the definition of employee and employer are nearly
identical as those under the FLSA, though the NYLL does not require that a defendant achieve a
certain minimum in annual sales or business in order to be subject to the law. N.Y. Lab. Law §§
651(5)-(6); *Garcia v. Badyna*, No. 13-CV-4021(RRM)(CLP), 2014 WL 4728287, at *6
(E.D.N.Y. Sept. 23, 2014). The Court sees no reason why Defendants would not be liable under
the NYLL given the FLSA analysis set forth above. Similarly, there is no meaningful difference
with respect to the FLSA and NYLL tests for individual defendants, and so the Court similarly
finds Sheeran liable as Plaintiffs' employer. *See Apple v. Atl. Yards Dev. Co., LLC*, No. 11-CV-
5550(JG), 2014 WL 5450030, *6-9 (E.D.N.Y. Oct. 27, 2014); *Copantitla v. Fiskardo Estiatorio,
Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011).

　　Under both the FLSA and NYLL, each Defendant is jointly and severally liable for any
damages award made in Plaintiffs' favor. *See Pineda v. Masonry Const., Inc.*, 831 F. Supp. 2d
666, 685-86 (S.D.N.Y. 2011).

　　Having established that Plaintiffs have a cognizable employer-employee relationship with
Defendants under the FLSA and NYLL, the Court then shifts to analyzing allegations made with
respect to specific provisions of the laws. Under the FLSA, an employee bears the burden of

proving that she was not properly compensated for her work. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686-87 (1946), *superseded on other grounds by* The Portal-to-Portal Act of 1947, 29 U.S.C. Sec. 251, *et seq.*. The employee can do so by obtaining and producing her employer's records. *Id.* at 687. However, when the "employer's records are inaccurate or inadequate," the employee can meet her burden if she "produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* "A plaintiff may do so solely through his own recollection." *Pineda*, 831 F. Supp. 2d at 674. Here, Plaintiffs allege that Defendants failed to keep adequate records. Compl. ¶ 50. The burden then shifts to the employer to present evidence of the work performed and amounts paid. *Anderson*, 328 U.S. at 687-88. Similarly, under the NYLL, employers who fail to maintain adequate records "bear the burden of proving that the complaining employee was paid." N.Y. Lab. Law § 196-a.

Pursuant to the FLSA and NYLL, an employee must be paid the minimum wage for the first 40 hours that he or she worked in a given work week. 29 U.S.C. § 206(a); 12 N.Y.C.R.R. § 146–1.2. Moreover, an employee is entitled to be paid for overtime hours – those exceeding 40 per week – at a "rate not less than one and one-half times the regular rate at which [the employee] is employed." 29 U.S.C. § 207(a)(1); 12 N.Y.C.R.R. § 142–2.2. For employees paid a weekly salary rather than an hourly rate, there is a rebuttable presumption under the FLSA that the salary covers no more than 40 hours per week. *See, e.g.*, *Pinovi v. FDD Enters., Inc.*, No. 13-CV-2800(GBD), 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015).

Pelgrift alleges that at various points in her employment, she earned only $35 per seven- or nine-hour shift, as well as tips. Compl. ¶ 27. This works out to less than $5 per hour, which falls below both the federal and New York minimum wages. Additionally, at other points in Pelgrift's employment, she alleges that she was paid random amounts, *id.* ¶ 31, or paid below

minimum wage as an events booker. *Id.* ¶ 35, 42.  Given the tumultuous employment relationship alleged throughout, the specifics of Pelgrift's payments and hours worked are confusing.  Nonetheless, given that Pelgrift does not have the benefit of accurate record-keeping, the Court makes certain allowances.  Defendants, in opposing this motion, fail to raise any arguments against liability beyond the two defenses the Court found non-meritorious above.  For example, Defendants do not argue that as a "tipped employee," Pelgrift is exempt from the minimum wage laws.  As such, the argument is deemed waived.  The Court finds Defendants liable to Pelgrift for uncompensated minimum wage payments.

Plaintiff Kolisnyk's allegations more clearly establish liability for failure to pay minimum wage.  In addition to the similar $35 paid per eight- or nine-hour shift that Pelgrift alleges, Kolisnyk alleges that for the last two weeks of her employment, Defendants only compensated her fifty dollars at the conclusion of her eight-hour shifts. *Id.* ¶ 52.  Kolisnyk also alleges that Defendants would force her to pay back money earned in tips and for alleged shortages between the receipts and the cash register. *Id.* ¶¶ 53-56.  These allegations are sufficient to support a claim that Defendants' failed to consistently pay Kolisnyk the required minimum wage.

As for Pelgrift and Kolisnyk's overtime claims, the Complaint includes conclusory allegations that Defendants failed to pay them "overtime for hours worked in excess of 40 hours per week." *Id.* ¶¶ 43, 60.  Pelgrift adds some detail in pleading that she "worked between 70-90 hours per week during the first 10 months of her employment (totaling approximately $16,800 in unpaid overtime) and thereafter around 50-70 hours per week (totaling approximately $7,560 in unpaid overtime wages)." *Id.* ¶ 45.  Kolisnyk offers no additional details.  Both Plaintiffs' affidavits, filed as exhibits to the present motion for the entry of default judgment, simply restate

16

the allegations made in the complaint and do not provide additional detail. Dkt. No. 74, Ex. A & B.

Under the standard set by the Second Circuit in *Lundy v. Catholic Health System of Long Island Incorporated*, in order to state a plausible FLSA overtime claim, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of the 40 hours." 711 F.3d 106, 114 (2d Cir. 2013). Pelgrift's more detailed pleading is sufficient to establish Defendants' liability, but Kolisnyk's failure to allege any detail beyond the one conclusory statement is fatal. Even without records, Kolisnyk could have offered her own recollections as to how often and when she worked in excess of forty hours in a week without receiving time and a half. The Court cannot find Defendants liable for failure to pay overtime to Kolisnyk.

Finally, Pelgrift also sues for so-called "spread of hours" wages under NYCRR § 146-1.6. On each day in which the beginning and end of the workday are more than 10 hours apart, a worker is entitled to "one additional hour of pay at the basic minimum hourly rate." N.Y. Comp. Codes R. & Regs. Tit. 12. § 146-1.6. This provision applies regardless of the employee's hourly salary. *Id.* Pelgrift alleges that Defendants failed to pay her "a premium/additional amount for hours worked in excess of ten (10) hours per day, in violation of the NYLL." *Id.* ¶ 47. That is the sum and substance of her claim, and she does not point to any individual day in which the beginning and end of her workday were more than 10 hours apart and she failed to receive this compensation. Her conclusory allegation cannot be sufficient to establish Defendants' liability.

In sum, on Plaintiffs' FLSA and NYLL claims, Defendants are found to be liable to Plaintiff Pelgrift as to both unpaid minimum wage compensation and overtime compensation,

but not spread-of-hours wages, and liable to Plaintiff Kolisnyk for only unpaid minimum wage compensation.

### 2.    Breach of Plaintiff Pelgrift's Contract

Plaintiff Pelgrift also brings a claim for breach of contract under New York Law. *Id.* ¶ 2. To establish a prima facie case for breach of contract under New York law, a plaintiff must prove: "(i) the existence of a contract; (ii) performance of the contract by one party; (iii) breach by the other party; and (iv) damages suffered as a result of the breach." *Calgon Carbon Corp. v. WDF, Inc.*, No. 08-CV-4407(CM), 2010 WL 1244766, at *5 (S.D.N.Y. 2010) (citing *First Inv'rs Corp. v. Liberty Mut. Ins. Co.*, 152 F.3d 162 (2d Cir. 1998)).

Pelgrift alleges that she had an agreement with Defendant Sheeran that she would "run and solicit events on behalf of Tobacco Road" in exchange for earning commissions on top of wages. Compl. ¶¶ 28-30.  The terms of their agreement shifted over time, *see, e.g.*, *id.* ¶¶ 32-35, but the latest terms included Pelgrift earning 10% commissions on bar earnings of $1,500 Sunday through Wednesday and $2,000 Thursday through Saturday, plus rental amounts collected for events. *Id.* ¶ 37.  Pelgrift alleges that Defendants, upon terminating her in February 2014, refused to pay her commissions she had earned from December 2013 onward. *Id.* ¶¶ 38-39. For example, she provides that she booked an event for January 22, 2014 that made $1,700 in bar revenues, but for which she received no commission. *Id.* ¶ 40.  In total, Pelgrift claims unpaid commissions in excess of $24,000. *Id.* ¶ 41.

Accepting these factual allegations as true, as the Court must as a result of Defendants' default, *Mickalis Pawn Shop, LLC*, 645 F.3d at 137, Pelgrift has adequately stated a claim for breach of contract and the Court finds the Defendants liable on this cause of action.

### 3.   Title VII

All three Plaintiffs bring the action pursuant to Title VII of the Civil Rights Act of 1964 on claims of sexual harassment, discrimination based on gender, termination for refusing to submit to Defendant Sheeran's sexual demands, and for retaliation resulting from their intentions to file this lawsuit. Compl. ¶ 3.

#### a.  Sexual Harassment

Under Title VII, it is unlawful for "an employer…to discriminate against any [employee] with respect to…sex." 42 U.S.C. § 2000e-2(a)(1). "[T]he kinds of workplace conduct that may be actionable under Title VII…include '[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature.'" *Redd v. New York Div. of Parole*, 678 F.3d 166, 175 (2d Cir. 2012) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)) (alterations in original).  Sexual harassment in the workplace violates Title VII's prohibition against sex discrimination when such harassment fits into one (or both) of two paradigms: quid pro quo sexual harassment or hostile work environment. "Quid pro quo sexual harassment refers to situations in which 'submission to or rejection of [unwelcome sexual] conduct by an individual is used as the basis for employment decisions affecting such individual.... It is enough to show that the supervisor used the employee's acceptance or rejection of his advances as the basis for a decision affecting the compensation, terms, conditions or privileges of the employee's job.'" *Perks v. Town of Huntington*, 251 F. Supp. 2d 1143, 1154–55 (E.D.N.Y. 2003) (quoting *Karibian v. Columbia Univ.*, 14 F.3d 773, 777-78 (2d Cir. 1994)) (alterations in original). "Employers are strictly liable for quid pro quo harassment committed by supervisors." *Id.* at 1155 (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807–08 (1998) and *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998)).  The hostile work environment paradigm of sexual harassment permits a plaintiff to recover if the plaintiff can show that the

19

harassment was so "severe or pervasive" as to "alter the conditions of [the victim's] employment and create an abusive working environment." *Id.* (quoting *Meritor*, 477 U.S. at 67). A corporation can be held vicariously liable for a hostile environment created by a supervisor with authority over the employee where the harassment results in a tangible undesirable employment action, such as discharge or demotion. *See Redd*, 678 F.3d at 182; *Russo v. N.Y. Presbyterian Hosp.*, No. 09-CV-5334(MKB), 2013 WL 5346427, at *11 (E.D.N.Y. Sept. 23, 2013).

The burden of proof in establishing a prima facie discrimination case is de minimis. *Brennan v. Metro. Opera Ass'n., Inc.*, 192 F.3d 310, 316-17 (2d Cir. 1999). In this case, each plaintiff has met her de minimis burden. The Court considers the allegations made by each plaintiff in turn.

Pelgrift alleges persistent unwanted advances on the part of Defendant Sheeran. When Pelgrift was first hired, he allegedly made comments like, "You have a good body and nice tits." Compl. ¶ 62. He repeatedly told Pelgrift that she should marry him. *See, e.g., id.* ¶ 64, 68 ("You need an older man with a job and assets that can provide you with the right life and treat you as the beautiful woman that you are… Someone like me, for example."). Pelgrift alleges that she made it clear that she was not interested, but that this did not stop Sheeran's advances. *Id.* ¶¶ 69-70. Pelgrift alleges that Sheeran put his hand on her hip, and when she objected, remarked "[s]o, what you are saying is that if I want to have a shot at this, I have to fire you?" *Id.* ¶ 72; *see also id.* ¶ 76 (alleging a similar comment at a later date). Sheeran allegedly made repeated remarks about how his genitalia still functions, *id.* ¶¶ 74, 76, and upon rehiring Pelgrift in January 2014, asked if there would be "any sucking or fucking going on?" *Id.* ¶ 75. Pelgrift claims that she complained to Sheeran's son about his father's "persistent unwanted sexual advances" around

February 2014. *Id.* ¶ 79.  A few days later, Defendant Sheeran terminated her employment. *Id.* ¶ 80.

These allegations are sufficient to make out a prima facie case of discrimination under both paradigms of harassment.  Pelgrift adequately alleges a connection between employment decisions and her rejection of Sheeran's sexual advances.  She also adequately alleges persistent harassment such that a reasonable person would have found the abuse so pervasive as to alter her working conditions.

Kolisnyk tells a similar story.  According to the Complaint, Defendant Sheeran would often sexually objectify Kolisnyk and discuss her body with other customers in her presence. *Id.* ¶ 94.  She recounts three separate occasions over the span of nine months in which Sheeran asked her to join him for dinner. *Id.* ¶¶ 95-98.  Kolisnyk would make up excuses about being unable to join because she feared retaliation for her refusals. *Id.* ¶¶ 99-100.  In case Sheeran's intentions were not clear, Kolisnyk also alleges that Sheeran inserted a note in a bouquet of flowers delivered for her that said, "[t]rying to get in your pants, Dave." *Id.* ¶ 102.  Kolisnyk alleges that Sheeran would make explicit comments to Kolisnyk about her female co-workers, would question her about her relationships with customers who complimented her work, and would spread rumors that she had sexual relations with bar patrons. *Id.* ¶¶ 104-07.  Kolisnyk also alleges physical sexual harassment.  Among other things, she claims Sheeran would "often slap and tap" her lower back or push her against the entrance of the bar. *Id.* ¶ 109.  Around April 4, 2014, Kolisnyk alleges that she awoke from a quick nap to find Sheeran attempting to climb on top of her. *Id.* ¶¶ 110-112.  She was terminated one week later. *Id.* ¶ 113.  While Sheeran purportedly claimed it was because Kolisnyk was taking money from the cash register, Kolisnyk

believes it was due to her "failure to acquiesce to Defendant's unwelcome sexual and predatory advances." *Id.* ¶¶ 114-15.

Again, as with Pelgrift, Kolisnyk's allegations are sufficient to meet the de minimis burden to establish a prima facie discrimination case under Title VII pursuant to either paradigm of harassment. Allegations related to Sheeran's unwelcome sexual conduct and statements created both a hostile work environment and can be construed to have related to an adverse employment action – namely, Kolisnyk's termination.

Finally, Plaintiff Lutsenko alleges similar statements and conduct on the part of Defendant Sheeran. She recounts comments he allegedly made in reference to her breasts, *id.* ¶¶ 122, 127, 132, comments he made about other female employees, *id.* ¶ 123, and comments he made about Lutsenko to patrons, *id.* ¶ 125. Lutsenko also alleges unwanted physical touch, such as brushing up against her and slapping her rear. *Id.* ¶¶ 126, 129. She alleges multiple comments Sheeran made to her indicating his interest in being with her. *Id.* ¶¶ 135-36, 140, 142, 148. Lutsenko pleads, upon information and belief, that "employees that Defendant SHEERAN had relations with were highly favored and given longer and better shifts than the female employees who did not succumb to Defendant's sexual advances." *Id.* ¶ 130. She proceeds to identify employment actions she believes were related to her responses to Sheeran's advances. For example, Sheeran had offered Lutsenko a managerial position at a new bar because "she had the right look," which she accepted. *Id.* ¶¶ 143-44. However, later, after declining a dinner invitation, road trip, cruise vacation, and offer of lingerie, Lutsenko was terminated. *Id.* ¶¶ 144-46, 148, 151, 160, 161. Lutsenko believes it was a form of retaliation for her "rejection of his gifts, offers and sexual advances." *Id.* ¶ 161.

Lutsenko's allegations are sufficient to meet the de minimis burden here and state a claim under both paradigms of Title VII harassment. She adequately alleges a connection between Defendant's advances and her employment status, and a reasonable person would find the alleged harassment so pervasive as to alter her working conditions.

In sum, given Sheeran's ownership of the corporations and supervisory rule, the Court finds the corporate Defendants vicariously liable to all Plaintiffs for Sheeran's sexual harassment under Title VII.

### b. Retaliation

Under Title VII, Plaintiffs also allege retaliation for their intention to file this lawsuit. Title VII prohibits an employer from "discriminat[ing] against any of [its] employees…because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, Plaintiffs must show that "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." *Raniola v. Bratton*, 243 F.3d 610, 624 (2d Cir. 2001) (quotation marks and citation omitted).

Each plaintiff filed a complaint with the EEOC, which counts as a protected activity. *Id.* at 624-26; Compl. at 36-38 (attaching the EEOC charges). However, Plaintiffs fail to plead that Defendants were aware of the EEOC filing or of Plaintiffs' intention to file the present action during the time period in question, nor that a causal connection existed. The EEOC charges all

23

date from many months after each plaintiff was terminated, *id.*, and the Complaint's only mention of the present suit indicates that Defendant Sheeran did not learn about it until after he had terminated Pelgrift. *Id.* ¶ 81.

Pelgrift alleges that she approached Sheeran's son and told him "about his father's persistent unwanted sexual advances." *Id.* ¶ 79. But while informal complaints to supervisors about purportedly discriminatory activity are also protected activity, *see Thomas v. iStar Fin., Inc.*, 438 F. Supp. 3d 348, 364 (S.D.N.Y. 2006), there is no assertion that Sheeran's son was Pelgrift's supervisor. Plaintiffs Kolisnyk and Lutsenko make no allegation that Sheeran knew of their intention to sue, nor do they connect any adverse employment action to any other protected activity.

Given the paucity of these allegations, the Court cannot find liability under Title VII for retaliation.

### 4.     New York City Human Rights Law ("NYCHRL")

Plaintiffs also bring the same sexual harassment and gender discrimination claims brought under Title VII under the New York City Human Rights Law ("NYCHRL"). The Court need not separately analyze the Plaintiffs' claims under the NYCHRL having found liability under Title VII because the statute was "intended to be more protective than the state and federal counterpart." *Farrugia v. N. Shore Univ. Hosp.*, 820 N.Y.S.2d 718, 724 (N.Y. Sup. Ct. 2006). Having established liability under the stricter standards of Title VII, Plaintiffs have also established liability under the broader standards of the NYCHRL. *Adams v. City of New York*, 837 F. Supp. 2d 108, 127 (E.D.N.Y. 2011) (finding no need to separately analyze NYCHRL claims because those that satisfied federal standards will necessarily satisfy the less exacting NYCHRL standards). "The standard for maintaining a hostile work environment claim is lower

under the NYCHRL." *Bermudez v. City of New York*, 783 F. Supp. 2d 560, 579 (S.D.N.Y. 2011).

Indeed, all that is required under the NYCHRL is that Plaintiffs proffer evidence of "unwanted

gender-based conduct." *Id.* (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27,

38-39 (2009)).  All three plaintiffs have alleged sufficient evidence of "unwanted gender-based

conduct."

 While Title VII does not allow individual defendants to be held personally liable, the

NYCHRL <u>does</u> provide for individual liability. *See Rodriguez v. Express World Wide, LLC*, No.

12-CV-4572(RJD)(RML), 2014 WL 1347369, at *4 (E.D.N.Y. 2014).  Plaintiffs have

established that Defendant Sheeran is directly liable for sexual harassment as the alleged

perpetrator.

 In sum, the Court finds all Defendants liable on this cause of action under the NYCHRL,

including Defendant Sheeran.

### 5. Defamation

 While the Complaint does not make Plaintiffs' defamation allegations clear, the Court

interprets the claim as made in reference to some of the alleged remarks of Defendant Sheeran.

Namely, with respect to Plaintiff Kolisnyk, she alleges that "Defendant SHEERAN often spread

rumors to third parties that Plaintiff KOLISNYK had sexual relations with the patrons of

Defendant TAVERN." Compl. ¶ 107.  With respect to Plaintiff Lutsenko, the Court cannot

determine what specific defamation is alleged.

 For these two plaintiffs, the Court does not find Defendants liable for defamation.  Under

New York law, to prevail on a defamation claim, the claimant must establish the following

elements: "(i) a defamatory statement of fact concerning the plaintiff, (ii) publication to a third

party by the defendant, (iii) falsity of the defamatory statement, (iv) some degree of fault, and (v)

25

special damages or per se actionability (defamatory on its face)." *Daniels v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 02-CV-9567(KNF), 2003 WL 22410623, at *4 (S.D.N.Y. 2003). Neither plaintiff specifically states when, where, or in what manner the supposed defamatory statements were made; this is insufficient. *See Ello v. Singh*, 531 F. Supp. 2d 552, 581 (S.D.N.Y. 2007).

However, with respect to Plaintiff Pelgrift, defamation *per se* is sufficiently well-pleaded. Defamation *per se* under New York law includes statements that "tend to injure another in his or her trade, business or profession." *Liberman v. Gelstein*, 80 N.Y.2d 429 (1992). In addition to proving that each statement constitutes defamation per se, Plaintiff is required to prove "that (1) the statement 'concern[s] the plaintiff'; (2) one or more of the Defendants communicated the statement to someone other than Plaintiff; (3) the statement is false—i.e., not 'substantially true'; (4) one or more of the Defendants acted at least negligently in publishing the statement; and (5) Plaintiff suffered damages as a result of the publication of the statement." *Bouveng v. NYG Capital LLC*, 175 F. Supp. 3d 280, 319 (S.D.N.Y. 2016) (citing *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 176 (2d Cir. 2000)) (outlining the elements of defamation per se).

Pelgrift alleges that after Sheeran learned of her intent to file a sexual harassment suit, Sheeran approached the police with "malicious and knowingly false allegations" against her, and published them on Facebook. Compl. ¶¶ 81-85. The statements published on Facebook included such phrases as, "Patricia has been taking money from many promoters under false pretenses," and "[i]f you have given her money also know that she has never given a cent of it to the venue and has kept it." *Id.* ¶ 84. This statement, made by Defendant Sheeran about Plaintiff Pelgrift, which is alleged to be knowingly false, can be inferred to have caused Pelgrift economic damage as a result of her worsened reputation as an events booker.

Accordingly, the Court finds Defendants liable for defamation as to Plaintiff Pelgrift, but not with respect to Plaintiffs Kolisnyk and Lutsenko.

### D.    Damages

Now that liability is established, the "sole remaining issue before the court is whether the plaintiff has provided adequate support for the relief it seeks." *Bleecker v. Zetian Sys., Inc.*, No. 12-CV-2151(DLC), 2013 WL 5951162, at *6 (S.D.N.Y. Nov. 1, 2013) (citing *Transatl. Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citations omitted). "Establishing the appropriate amount of damages involves two steps: (1) 'determining the proper rule for calculating damages on…a claim'; and (2) 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *Begum v. Ariba Disc., Inc.*, No. 12-CV-6620(DLC), 2015 WL 223780, at *4 (S.D.N.Y. Jan. 16, 2015) (quoting *Credit Lyonnais*, 183 F.3d at 155) (alterations in original).

On an inquest for damages, the plaintiff bears the burden of proof and must introduce sufficient evidence to establish the amount of damages with reasonable certainty. *Transatl. Marine*, 109 F.3d at 111. The Second Circuit has approved the holding of an inquest by affidavit, without an in-person court hearing, "as long as [the Court has] ensured that there was a basis for the damages specified in the default judgment." *Id.* (quoting *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *see also Action S.A. v. Marc Rich & Co.*, 951 F.2d

504, 508 (2d Cir. 1991) (leaving the decision of whether a hearing is necessary for determining damages to the discretion of the district court).

   While the plaintiff bears the burden of establishing the damages amount with "reasonable certainty," in a FLSA case, in the absence of rebuttal by defendants, plaintiff's recollection and estimates are presumed to be correct. *See Anderson*, 328 U.S. at 687-88; *Tran v. Alphonse Hotel Corp.*, 281 F.3d 23, 31 (2d Cir. 2002); *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 87-88 (2d Cir. 2003). As the Supreme Court recognized in *Anderson*, "employees seldom keep…records [of hours worked] themselves; even if they do, the records may be and frequently are untrustworthy." 328 U.S. at 687-88. The employee's recollection and estimates are presumed correct where, as here, Defendants are alleged to have "failed to maintain accurate and sufficient time records." Compl. ¶ 50; *Anderson*, 328 U.S. at 688 ("The employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records in accordant with [the FLSA's record-keeping provisions.]"). The same presumption applies where the employer has defaulted. *See, e.g.*, *Pavia v. Around the Clock Grocery, Inc.*, No. 03-CV-6465(ERK)(CLP), 2005 WL 4655383, at *5 (E.D.N.Y. Nov. 15, 2005) (citing *Liu v. Jen Chu Fashion Corp.*, No. 00-CV-4221(RJH)(AP), 2004 WL 33412, at *3 (S.D.N.Y. Jan. 7, 2004)).

   Nonetheless, in this case, even presuming that Plaintiffs' recollections are accurate, the Court does not find the submitted affidavits sufficient to establish the amount of damages with reasonable certainty. *See Avelar v. Ed Quiros, Inc.*, No. 13-CV-7017, 2015 WL 5664288 (ADS)(AYS), at *8 (E.D.N.Y. Sept. 24, 2015) (noting that "Plaintiffs must at least provide the court with the reasonably detailed benefit of their recollection" and requesting that plaintiffs supplement their affidavit testimony by supplying more specific information). Consequently, the

Court refers this matter to the Magistrate for an inquest into damages attributable to the relevant claims.

To give Plaintiffs a sense of the deficiencies, the Court will analyze Plaintiff Pelgrift's claims for illustrative purposes. The attempt to calculate the damages she is owed under the FLSA and NYLL lays bare certain informational gaps. From on or around October 21, 2012 until November 2012, Pelgrift alleges that she received $35 per shift plus tips for shifts of either 7 or 9 hours. Pelgrift Aff. ¶ 3. She does not specify how many shifts she worked or how many total hours she worked. From March 2013 to July 2013 and from August 2013 to February 2014, Pelgrift describes a promise made to her of a percentage-based commission only paid when the bar earned more than a certain threshold of revenue in a single night. *Id.* ¶¶ 6-8. However, Pelgrift does not offer an estimate of how often the bar met these thresholds, and thus, offers no accounting of how she arrives at her estimate of the total commissions she is owed ($24,000), including the specific recollections, calculations, and assumptions upon which the total number is based. *Id.* ¶ 10. Pelgrift pleads she was promised payments based on rental amounts collected for events from December 2013 to February 2014, but does not provide information or estimates of the total amounts collected. *Id.* ¶ 8.

While incomplete information can be partially excused given Plaintiffs' lack of access to detailed and accurate records, the Court still must "ascertain the amount of damages with reasonable certainty." *Credit Lyonnais*, 183 F.3d at 155. Supplemental evidence and a formal inquest are needed to meet this standard.

## III.   Conclusion

For the foregoing reasons, Plaintiffs' motion for the entry of default judgment is GRANTED only as to the liability of Defendants for: (1) failure to pay minimum wages to

Plaintiffs Pelgrift and Kolisnyk under the FLSA and NYLL; (2) failure to pay overtime wages to Plaintiff Pelgrift under the FLSA and NYLL; (3) breach of their contract with Plaintiff Pelgrift; (4) for sexual harassment and gender discrimination of all Plaintiffs under Title VII (corporate Defendants only); (5) for sexual harassment and gender discrimination of all Plaintiffs under the NYCHRL; and (6) for defamation of Plaintiff Pelgrift.

The Court refers this matter to the Magistrate Judge for an inquest into damages attributable to those claims. The Magistrate will set a schedule for supplemental submissions.

This resolves Dkt. No. 72.

SO ORDERED.


Dated: September ___, 2017
       New York, New York

_____
ALISON J. NATHAN
United States District Judge