**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------------X      **14-CV-8934 (AJN)(KNF)**
PATRIZIA PELGRIFT, IRYNA LUTSENKO and
VALERIYA KOLISNYK,

                                        Plaintiffs,

                        - against -

355 W. 41ST TAVERN INC. and DAVID SHEERAN,
*Individually,*

                                        Defendants.
-----------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' OBJECTIONS TO**
**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**PHILLIPS & ASSOCIATES, PLLC**
**45 Broadway, Suite 620**
**New York, New York 10006**
**(212) 248-7431**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ......................................................................................... 1

PROCEDURAL HISTORY................................................................................................. 1

ARGUMENTS..................................................................................................................... 2

I.      Standard of Review................................................................................................... 2

II.     Plaintiffs' Counsel Satisfied the Identification and Authentication Requirements for Evidence to be Admissible under the Federal Rules of Evidence ....................................... 3

III.    Plaintiffs Respectfully Request that the District Court Exercise its Discretion in Reviewing Plaintiffs Pelgrift's and Kolisnyk's Corrected Damage Calculations with Respect to Defendants' Liability under the FLSA and NYLL ................................................ 9

        A.     *Plaintiff Pelgrift* ......................................................................... 11

        B.     *Plaintiff Kolisnyk* ....................................................................... 15

IV.    Proof of Mitigation is Immaterial as Defendants Forfeited the Affirmative Defense of Mitigation of Damages by Defaulting ................................................................................. 17

V.     Plaintiffs Provided Sufficient Evidence to Support their Damages Calculations with Respect to their Emotional Distress Damages .................................................................... 18

VI.    Plaintiffs Provided Sufficient Evidence to Support their Damages Calculations with Respect to Punitive Damages..................................................................................................... 20

VII.   Requested Hourly Rates for Plaintiffs' Counsel are Reasonable...................................... 20

VIII.  Total Hours Spent Are Reasonable..................................................................................... 22

IX.    Plaintiffs' Counsel Provided Basis for the Court to Determine Whether the Amount of Costs is Reasonable........................................................................................................... 23

CONCLUSION.................................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509 (S.D.N.Y. 2011) ...................................... 23

*Calle v. NDG Coffee Shop, Inc.*, 2018 U.S. Dist. LEXIS 62979 (S.D.N.Y. April 12, 2018) ....... 21

*Dimopoulou v. First Unum Life Ins. Co.*, 2017 U.S. Dist. LEXIS 15944 (S.D.N.Y. February 3, 2017) ................................................................................................................................................ 21

*Elisama v. Ghzali Gourmet Deli, Inc.*, 2016 U.S. Dist. LEXIS 58833 (S.D.N.Y. April 29, 2016) ................................................................................................................................................ 15

*Faulkner v. Arista Records LLC*, 797 F. Supp. 2d 299 (S.D.N.Y. 2011) ...................................... 6

*Gortat v. Capala Bros.*, 2014 U.S. Dist. LEXIS 108077 (S.D.N.Y. June 4, 2014)...................... 23

*Grassia v. Scully*, 892 F.2d 16 (2d Cir. 1989) .............................................................................. 3

*Guallpa v. NY Pro Signs Inc.*, 2014 U.S. Dist. LEXIS 77033 (S.D.N.Y. May 27, 2014) ........... 21

*Gutierrez v. Taxi Club Mgmt.*, 2018 U.S. Dist. LEXIS 106808 (E.D.N.Y. June 25, 2018) ......... 20

*Harrison-Hoge Indus. v. Panther Martin S.R.L.*, 2008 U.S. Dist. LEXIS 25480 (E.D.N.Y. March 31, 2008) ........................................................................................................................................ 4

*Hines v. City of Albany*, 2011 U.S. Dist. LEXIS 68548 (N.D.N.Y. June 27, 2011)...................... 4

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 U.S. Dist. LEXIS 82085 (S.D.N.Y. Apr. 18, 2008) .................................................................................................................................................. 22

*Jimenez v. KLB Foods, Inc.*, 2015 U.S. Dist. LEXIS 84370 (S.D.N.Y. June 29, 2015) ............. 22

*John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462 (S.D.N.Y. 2000) .... 5

*Johnson v. Strive E. Harlem Empl. Grp.*, *Johnson v. Strive E. Harlem Empl. Group*, 2014 U.S. Dist. LEXIS 10342 (S.D.N.Y. Jan. 28, 2014)............................................................................... 21

*Laboy v. Office Equip. & Supply Corp.*, 2016 U.S. Dist. LEXIS 134787 (S.D.N.Y. September 29, 2016) ................................................................................................................................................ 17

*Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278 (S.D.N.Y. 2012)................................. 5

*Leo v. Long Island R.R.*, 307 F.R.D. 314 (S.D.N.Y. 2015) .......................................................... 19

*Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426 (S.D.N.Y. 2015) .............................. 3, 10, 11

*Lewis v. Zon*, 573 F. Supp. 2d 804 (S.D.N.Y. 2008) ...................................................................... 2

*Lora v. J.V. Car Wash, Ltd*., 2015 U.S. Dist. LEXIS 99444 (S.D.N.Y. July 24, 2015) .............. 20

*Morgenstern v. County of Nassau*, 2009 U.S. Dist. LEXIS 116602 (E.D.N.Y. Dec. 15, 2009) .. 17

*Motorola, Inc. v. Abeckaser*, 2009 U.S. Dist. LEXIS 73594 (E.D.N.Y. Aug. 19, 2009) ............. 22

*Owens-Corning Fiberglas v. U.S. Air*, 853 F. Supp. 656 (E.D.N.Y. 1994) ................................... 4

*Pakter v. New York City Dep't of Educ*., 2010 U.S. Dist. LEXIS 120398 (S.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 8813 (S.D.N.Y. Jan. 31, 2011)... 21

*Raskin v. Wyatt Co.*, 125 F.3d 55 (2d Cir. 1997) ........................................................................... 5

*Rozell v. Ross-Holst*, 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ........................................................ 21

*Shukla v. Sharma*, 2012 U.S. Dist. LEXIS 18392 (E.D.N.Y. Feb. 14, 2012).............................. 20

*Thorsen v. County of Nassau*, 722 F. Supp. 2d 277 (2d Cir. 2010)............................................... 19

*Trs. of the Local 8A-28A Welfare Fund v. Am. Group Adm'rs*, 2017 U.S. Dist. LEXIS 137365 (E.D.N.Y. Aug. 25, 2017) .............................................................................................................. 4

*United States v. Bagaric*, 706, F.2d 42 (2d Cir. 1983) ................................................................. 5

*United States v. Gagliardi*, 506 F.3d 140 (2d Cir. 2007).............................................................. 5

*United States v. Letscher*, 83 F. Supp. 2d 367 (S.D.N.Y. 1999).................................................... 4

*Xochimitl v. Pita Grill of Hell's Kitchen, Inc*., 2016 U.S. Dist. LEXIS 121259 (S.D.N.Y. Sep. 8, 2016) .............................................................................................................................................. 15

**STATUTES**

28 U.S.C. § 1746.......................................................................................................................... 7, 8

28 U.S.C. § 636(b)(1) ...................................................................................................................... 1

28 U.S.C. § 636(b)(1)(c) .................................................................................................................. 2

29 U.S.C. § 201.............................................................................................................................. 1

42 U.S.C. § 2000e............................................................................................................................ 1

New York City Administrative Code § 8-107 ................................................................. 1

New York Labor Law § 190 ........................................................................................... 1

New York Labor Law § 650 ........................................................................................... 1

**OTHER AUTHORITIES**

Fed. R. Evid. 901(b) ...................................................................................................... 4

# PRELIMINARY STATEMENT[1]

Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure ("Rule") 72(b), Plaintiffs, Patrizia Pelgrift ("Pelgrift"), Irynsa Lutsenko ("Lutsenko"), and Valeriya Kolisnyk ("Kolisnyk") (collectively, as "Plaintiffs"), object to Magistrate Judge Kevin Nathaniel Fox's Report and Recommendation ("R & R"), Dkt. No. 92, in its entirety.  Accordingly, Plaintiffs request that the Court decline to adopt the R & R and instead, exercise its discretion to modify Judge Fox's R & R to award the damages that Plaintiffs request herein.

# PROCEDURAL HISTORY

On November 10, 2014, Plaintiffs commenced this wage and hour action under the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA") and New York Labor Law §§ 190 *et seq*. and 650 *et seq.* ("NYLL") and discrimination action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and the New York City Human Rights Law, New York City Administrative Code § 8-107, *et seq.* ("NYCHRL") against their former employers, 355 W. 41st Tavern Inc. and its owner, David Sheeran (collectively, as "Defendants").  Specifically, Pelgrift and Kolisnyk alleged, *inter alia*, that Defendants failed to pay them the statutorily-required overtime and minimum wage rate under the FLSA and NYLL. All three Plaintiffs also brought claims under Title VII and NYCHRL against Defendants for sexual harassment, gender discrimination, retaliation, and defamation.  Pelgrift alone brought a claim for breach of contract against Defendants.  As a result of Defendants' dilatory tactics to delay discovery, Plaintiffs moved to strike Defendants' Answer pursuant to Rule 37, which the Court granted. Dkt. No. 53.  In light of Defendants' default, Plaintiffs sought a certificate of default

---

[1] Counsel sincerely apologizes to the Court for the form that the request for relief was submitted.  Counsel humbly requests that the Plaintiffs not be punished for the mathematical mistake made in the request, as they were not done intentionally.  In addition, counsel apologizes for the inadvertent inclusion of the spread of hours calculations.  This was an oversight and was improperly kept in the final version of the submission.

from the Clerk of Court. Dkt. No. 55, 64. On October 20, 2016, Plaintiffs filed a motion for the entry of default judgment, which the Court granted and referred to Judge Fox for an inquest on damages. Dkt. No. 79.

Pursuant to Judge Fox's directives, Dkt. No. 81, on November 27, 2017, Plaintiffs filed their inquest submission. Dkt. No. 83. On July 3, 2018, Judge Fox issued an R & R, which recommended that no damages be awarded to Plaintiffs, except $20,000.00 to Pelgrift (consisting of $10,000.00 in emotional damages and $10,000.00 in punitive damages); $40,000.00 to Kolisnyk (consisting of $20,000.00 in emotional damages and $20,000.00 in punitive damages); and $40,000.00 to Lutsenko (consisting of $20,000.00 in emotional damages and $20,000.00 in punitive damages). In rendering the R & R, Judge Fox found that Plaintiffs failed to submit admissible evidence to support their damage calculations with reasonable certainty. Dkt. No. 92 at 29-30, 34. For the reasons described below, Plaintiffs respectfully request that the Court exercise its discretion in modifying Judge Fox's R & R and grant Plaintiffs' requested damages herein.

## ARGUMENTS

### I.  Standard of Review

When a party objects to the magistrate judge's R& R, a district judge must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to. *See* Rule 72(b)(3). Provided no clear error is apparent from the face of the record, the district court may adopt those portions of an R & R to which no timely objections are made. *See Lewis v. Zon*, 573 F. Supp. 2d 804, 811 (S.D.N.Y. 2008). The district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Rule 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(c) ("A judge of the court shall make a *de novo* determination of those portions of the [Magistrate Judge's] report or specified

2

proposed findings or recommendations to which objection is made . . . [and] may also receive further evidence."); *Grassia v. Scully*, 892 F.2d 16, 19 (2d Cir. 1989).   Given the circumstances outlined *infra*, it is respectfully requested that the Court consider the corrected calculations and supporting arguments that substantiate Plaintiffs' enumerated relief.

"The question whether a party may raise a new legal argument for the first time in objections to a magistrate judge's report and recommendation has not yet been decided in this Circuit." *Levy v. Young Adult Inst., Inc.*, 103 F. Supp. 3d 426, 433 (S.D.N.Y. 2015) (internal quotations and citation omitted).   Though some courts in this circuit have stated that a party waives any argument not presented to the magistrate judge, "[o]thers have applied a multi-factor test to determine whether a district court should exercise discretion to review arguments properly raised for the first time in objections to a magistrate judge's ruling." *See Levy*, 103 F. Supp. at 433.   The six factors are: "(1) the reason for the litigant's previous failure to raise the new legal argument; (2) whether an intervening case or statute has changed the state of the law; (3) whether the new issue is a pure issue of law for which no additional fact-finding is required; (4) whether the resolution of the new legal issue is not open to serious question; (5) whether efficiency and fairness militate in favor or against consideration of the new argument; and (6) whether manifest injustice will result if the new argument is not considered." *See id.* at 433-34.

## II.   Plaintiffs' Counsel Satisfied the Identification and Authentication Requirements for Evidence to be Admissible under the Federal Rules of Evidence

Judge Fox noted in the R & R that Plaintiffs' counsel "failed to satisfy the identification and authentication requirements for evidence to be admissible under the Federal Rules of Evidence." Dkt. No. 92 at 19.  First, Judge Fox declared that Plaintiffs' counsel "did not state that her declaration is based on personal knowledge and she failed to produce evidence sufficient to support a finding that the exhibits attached to her declaration are what they purport to be." Dkt.

No. 92 at 19. We respectfully object to this finding. "[P]ersonal knowledge is one, but not the only, method of authentication." *Trs. of the Local 8A-28A Welfare Fund v. Am. Group Adm'rs*, 2017 U.S. Dist. LEXIS 137365, at *8 (E.D.N.Y. Aug. 25, 2017) (citing Fed. R. Evid. 901(b)). As a threshold matter, "[w]hen there is good reason to believe that the authenticity of documents is not in issue, Plaintiffs' attorney may enter those documents into the record." *Trs. of the Local 8A-28A Welfare Fund*¸ 2017 U.S. Dist. LEXIS 137365, at *8-9[2]; *see Hines v. City of Albany*, 2011 U.S. Dist. LEXIS 68548, at *8-9, n.5 (N.D.N.Y. June 27, 2011) (explaining that "because the purpose of an attorney affidavit is to provide background and is not made on personal knowledge," the court did not consider defendants' counsel's affidavit as part of the record for purposes of a motion for summary judgment); *Harrison-Hoge Indus. v. Panther Martin S.R.L.*, 2008 U.S. Dist. LEXIS 25480, at *8 (E.D.N.Y. March 31, 2008) (denying plaintiff's motion to strike defendants' counsel's declaration, which was premised on the argument that it was not based on personal knowledge, because "it is well established that an attorney's affidavit can be used, in connection with a summary judgment motion, to place documents produced in discovery before the Court."); *United States v. Letscher*, 83 F. Supp. 2d 367, 381 (S.D.N.Y. 1999) ("It is usual for counsel to put documents before the Court on summary judgment motions as enclosures to counsel's affidavit."); *Owens-Corning Fiberglas v. U.S. Air*, 853 F. Supp. 656, 663 (E.D.N.Y. 1994) ("[B]ecause the clear function of the Affidavit is to identify and introduce into evidence the exhibits annexed

---

[2] In the alternative, in the event that Your Honor agrees with Judge's Fox's recommendation, Plaintiffs respectfully request that Your Honor simply disregard any statements in Plaintiffs' counsel's declaration with respect to the characterization of the attached exhibits and consider the exhibits themselves. *See Trs. of the Local 8A-28A Welfare Fund*¸ 2017 U.S. Dist. LEXIS 137365, at *9 ("To the extent any statements in a Declaration mischaracterize the attached exhibits, the Court will disregard those statements and consider the exhibits themselves."); *see also Doe v. Nat'l Bd. Of Podiatric Med. Exam'rs*, 2004 U.S. Dist. LEXIS 7409, at *4 (S.D.N.Y. Apr. 29, 2004) ("It is well-established that courts may simply decline to consider those aspects of a supporting affidavit that do not appear to be based on personal knowledge or are otherwise inadmissible.") (internal quotations omitted).

thereto, the purposes underlying Rule 56(e) - - to safeguard and legitimate the evidence used to decide a motion for summary judgment - - are not disserved by considering the Affidavit on this motion."). As such, we request that the exhibits be accepted as submitted.

Second, Judge Fox found that neither Plaintiffs nor their counsel identified the creators of certain exhibits and explained with any specificity or detail the content of such exhibits; therefore, Judge Fox averred that Plaintiffs, except for their own affidavits, failed to submit admissible evidence to support Plaintiffs' requests for damages. Dkt. No. 92 at 24, 40. Notwithstanding, a district court has broad discretion over an evidence's admissibility. *Lebewohl v. Heart Attack Grill LLC*, 890 F. Supp. 2d 278, 298 (S.D.N.Y. 2012) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 65-66 (2d Cir. 1997)). "The requirement of authentication . . . is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Rule 901(a). Under Rule 901(a), "[t]he bar for authentication of evidence is not particularly high." *United States v. Gagliardi*, 506 F.3d 140, 151 (2d Cir. 2007). A document may be authenticated based on its "appearance, contents, substance, internal patters, or other distinctive characteristics, taken in conjunction with circumstances[.]" *Lebeowhl*, 890 F. Supp. 2d at 298 (citing *United States v. Bagaric*, 706, F.2d 42, 67 (2d Cir. 1983)). Indeed, "[s]uch circumstantial evidence can include a document's appearance and content." *John Paul Mitchell Sys. v. Quality King Distribs., Inc.*, 106 F. Supp. 2d 462, 472 (S.D.N.Y. 2000) (finding that documents were authentic, in part, because of the documents themselves). "Moreover, the act of production implicitly authenticated the documents." *Id*. "Testimony is not the *sine qua non* of authentication[.]" *Id.*

Without the benefit of discovery, due to Defendants' dilatory tactics which ultimately led to their default, the exhibits attached to Plaintiffs' counsel's declaration came only from Plaintiffs. Plaintiffs are indeed in the best position to know whether they are indeed authentic. *See Faulkner*

*v. Arista Records LLC*, 797 F. Supp. 2d 299, 307 (S.D.N.Y. 2011) ("Plaintiffs produced the documents and are thus in the best position to know whether they are indeed authentic (as they appear to be)[.]").  Pelgrift's Exhibit 1 is her signed and notarized statement under the penalties of perjury that stated the information in the statement was based upon personal knowledge.  Pelgrift's Exhibits 2 and 3 were created by Pelgrift's counsel.  Pelgrift's Exhibit 4 designated her attempts to mitigate her damages.  These documents included W2s, Paystubs, and invoices from Plaintiff's independent contractor work.  Pelgrift provided Exhibit 5 as supporting evidence of her defamation claims.  In particular, a copy of a (then) recent screenshot of Defendants' Facebook page was provided to show that the defamatory comments could still be found on the social media website. In addition, Pelgrift quoted these statements in her Affidavit.  Pelgrift's Exhibit 6 consisted of e-mails that were forwarded to herself.  Judge Fox stated that the e-mail addresses "do not identify Pelgrift in any manner."  However, the e-mails referred to a "Patricia," which would be "Patrizia" spelled incorrectly.  In fact, most of the e-mail attachments spelled her name - - Patrizia - - correctly in the recipient field of the e-mails and signature block. Dkt. No. 84-6 at 1, 4, 6-7.  Pelgrift provided Exhibit 7 to show that Defendants failed to pay individuals, including Pelgrift, their commissions earned.  Exhibit 8 is a "sample" of the contracts Pelgrift executed with the bands she booked.  Due to Defendants' default, Pelgrift was only able to provide a sample of her contracts as those were the only documents in her possession.  Had Defendants not defaulted, Pelgrift would have been able to obtain additional copies of her other contracts that she negotiated and executed.  Pelgrift should not be penalized for not being able to produce every single contract she ever executed, including contracts that were not in her possession.  Pelgrift's Exhibit 9 supports her claims for emotional distress.  Such exhibit contains declarations of three individuals - - Pelgrift's husband and acquaintances - - who made statements under the penalties of perjury and upon personal

knowledge under 28 U.S.C. § 1746 and described her emotional distress and changes in personality.  Finally, Exhibit 10 is a copy of Pelgrift's Psychiatric Evaluation with Dr. Stephen Reich, a licensed psychologist. Dr. Reich wrote that due to, in part, Defendants' sexual harassment and defamation of Pelgrift, she experienced "sleep disturbance, poor appetite, difficulty focusing, concentrating and paying attention, sadness, anxiety, crying spells, and reduced sexual libido." Dkt. No. 84-15 at 13.  Additionally, Dr. Reich wrote that "[Pelgrift] was administered the Beck Depression Inventory and the Beck Anxiety Inventory.  On the Beck Depression Inventory, her score was in the severe range of depression.  On the Beck Anxiety Depression Inventory, her score was in the severe range of anxiety." *Id.*  This report is undisputed.

Exhibit 11 is Kolisnyk's signed and notarized statement under the penalties of perjury and stated that the information was based upon personal knowledge.  Kolisnnyk's Exhibits 12 and 13 were created by Kolisnyk's counsel and contain Kolisnyk's damage calculations.  Kolisnyk's Exhibit 14 designated her attempts to mitigate her damages.   These documents included a significant number of W2s and paystubs, as well as, tax documents used for her current job, with Hustler.  Exhibits 15 and 16 are calendars that Kolisnyk provided to show continued proof of her job attempts.  In Plaintiff Kolisnyk's Affidavit, she cited to specific dates of work for a number of temporary positions.  In support of that information, Kolisnyk provided Exhibits 15 and 16 to show that she was working those days, as she organized those dates on her calendars.  Exhibit 17 is composed of e-mails that Kolisnyk sent out in search of work to demonstrate her continued attempts to mitigate her damages.  Exhibit 22 is a copy of Kolisnyk's journal, which she provided - - with English (from Russian) translation attached - - to support her emotional distress claims. Exhibit 23 is composed of declarations from three individuals who described Kolisnyk's emotional distress and changes in personality under the penalties of perjury and upon personal knowledge

under 28 U.S.C. § 1746.  In fact, one individual stated she saw Plaintiff Kolisnyk's personality changed since she started to work for Defendants.  Lastly, Exhibit 24 is a copy of Kolisnyk's Psychiatrict Evaluation with Dr. Stephen Reich, a licensed psychologist, who wrote that Kolisnyk told him "she started to feel anxious and depressive" after she started to work for Defendants. Additionally, Kolisnyk "continued to feel anxious and depressive throughout her employment with David Sheeran.  She had trouble getting to sleep, and would wake up several times when she was asleep . . . She had trouble focusing and concentrating, and became sad and nervous.  She said she started to have crying spells 'every day or two.'" Dkt. No. 84-55 at 10.  Additionally, Dr. Reich wrote that "[Kolisnyk] was administered the Beck Depression Inventory and the Beck Anxiety Inventory.  On the Beck Depression Inventory, her score was in the severe range of depression. On the Beck Anxiety Depression Inventory, her score was in the severe range of anxiety." *Id.* at 11.  This is undisputed.

Finally, Exhibit 25 is Lutsenko's signed and notarized statement under the penalties of perjury and stated that the information was based upon personal knowledge.  Exhibit 26 was created by Pelgrift's counsel and contains Lutsenko's damage calculations.  Lutsenko provided Exhibit 27 to support her claims of emotional distress. Lutsenko produced her husband's declaration that described her emotional distress and changes in personality based on his personal observation-under penalties of perjury pursuant to 28 U.S.C. § 1746.  Lutsenko also provided Exhibit 28, which is a copy of Lutsenko's Psychiatrict Evaluation with Dr. Stephen Reich, a licensed psychologist, who wrote that: "[Lutsenko] stated that when she worked for David Sheeran, she became anxious and depressive after about two months of working for him.  She said she has trouble falling asleep, and would wake up, many times, during her hours of sleep.  She began to have a poor appetite and lost approximately ten pounds in a 3-4 month period of time.

She had difficulty focusing, concentrating and paying attention, became very sad and persistently anxious.  She said she had crying spells about once a week.  As is common among many individuals suffering from depressive symptomatology, her sexual libido became reduced." Dkt. No. 84-59 at 11.  Additionally, Dr. Reich wrote that "[Lutsenko] was administered the Beck Depression Inventory and the Beck Anxiety Inventory.  On the Beck Depression Inventory, her score was in the severe range of depression.  On the Beck Anxiety Depression Inventory, her score was in the severe range of anxiety." *Id.* at 12.  This too is undisputed.

Given the exhibits' appearance, contents, substance, or other distinctive characteristics, taken in conjunction with the circumstances that Plaintiffs produced such documents and Defendants' defaulted, thereby failed to produce any evidence during discovery, Plaintiffs satisfied the identification and authentication requirements for evidence and therefore should be admitted under the Federal Rules of Evidence.

### III. Plaintiffs Respectfully Request that the District Court Exercise its Discretion in Reviewing Plaintiffs Pelgrift's and Kolisnyk's Corrected Damage Calculations with <u>Respect to Defendants' Liability under the FLSA and NYLL</u>

Judge Fox wrote that Plaintiffs Pelgrift and Kolisnyk failed to provide sufficient evidence to support their damages under FLSA and NYLL with reasonable certainty.  Again, due to Defendants' default and therefore, failure to meet their burden in producing adequate time records regarding Plaintiffs Pelgrift and Kolsnyk, they had to rely on their own recollection to establish their damages; which they did through their own respective affidavits.  In the interest of correctly providing damage calculations pursuant to the pertinent legal authority that govern wage and hour cases, Plaintiffs Pelgrift and Kolisnyk respectfully request that the district court exercise its discretion in reviewing Pelgrift's and Kolisnyk's amended damage calculations for their wage and

hour claims, which are explained below.[3]   Applying the six-factor test discussed above, the balancing of the factors favors a review of the amended damage calculations under the FLSA and NYLL.  First, Plaintiffs did not raise the proper damage calculations for Plaintiffs Pelgrift and Kolisnyk earlier due to, admittedly, an oversight regarding the applicable federal regulations pertaining to the proper computation of unpaid overtime and minimum wages in light of commissions earned.  Second, there has been no intervening change in the law.  Third, this issue of damages for Pelgrift and Kolisnyk is a question of law for which no additional fact-finding is required.  Fourth, the resolution of the legal issue is not open to serious question as the federal regulation cited above, which governs calculation of unpaid overtime wages in light of commissions earned is a matter of straightforward mathematical calculation.  Fifth, efficiency and fairness militate in favor of considering the argument here; as the parties have fully briefed the issue and Judge Fox has already rendered an R & R.  Lastly, manifest injustice will result if the corrected damage calculations are not considered here as Pelgrift and Kolisnyk would not receive the proper amount that Defendants owe them as a result of their liability under the FLSA and NYLL.

Hence, a consideration of all factors favors a review of Plaintiffs Pelgrift's and Kolisnyk's corrected damage calculations under the FLSA and NYLL. *See Levy*, 103 F. Supp. 3d at 434

---

[3] Plaintiffs' original damage calculations did not take into consideration 29 C.F.R. § 778.109, which states: "[T]he regular hourly rate of pay of an employee is determined by dividing his total remuneration for employment (except statutory exclusions) in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid."  "Commissions (whether based on a percentage of total sales or of sales in excess of a specified amount, or on some other formula) are payments for hours worked and must be included in the regular rate.  This is true regardless of whether the commission is the sole source of the employee's compensation or is paid in addition to a guaranteed salary or hourly rate, or on some other basis, and regardless of the method, frequency, or regularity of computing, allocating and paying the commission." 29 C.F.R. § 778.117.  Similarly, under New York Labor Law, "[t]he term regular rate shall mean the amount that the employee is paid on a piece work basis, salary, or any basis other than hourly rate, the regular hourly wage rate shall be determined by dividing the total hours worked during the week into the employees' total earnings." N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.16.

("Upon analysis of these divergent factors, the Court concludes that it will exercise its discretion to consider Levy's statute of limitations challenge on the merits. This determination rests principally on the fact that the resolution of the issue at this stage will be most efficient.").

   A.   *Plaintiff Pelgrift*

Plaintiff Pelgrift worked for Defendants from October 21, 2012 through February 7, 2014. Dkt. No. 84-1 at ¶¶ 3, 27. From October 21, 2012 until in or around October 2012, Plaintiff Pelgrift worked as a bartender. Dkt. No. 84-1 at ¶¶ 3, 11. From in or around November 2012 until February 7, 2014, Plaintiff Pelgrift worked as an events manager for Defendants.[4] Dkt. No. 84-1 at ¶¶ 3, 27. As stated in her affidavit, as a bartender, from October 21, 2012 until the end of October 2012, Defendants required Plaintiff Pelgrift to work nine-hour shifts for three or four nights a week and compensated her $35.00 per shift, as well as tips.

From November 2012 until February 7, 2014, Defendants required Plaintiff Pelgrit to work fifteen-hour shifts for three days and seven-hour shifts for the remaining three days, with a total of sixty-six hours worked per week. Dkt. No. 84-1 at ¶¶ 9-10. In her affidavit, Plaintiff Pelgrift testified that in December 2012, Defendants required her to work fifteen-hour shifts for five days and a seven-hour shift for a day per week, totaling to eighty-two hours worked per week. Dkt. No. 84-1 at ¶10. She testified that in December 2013, Defendants required her to work approximately fifteen-hour shifts for two days and seven-hour shifts for four days, totaling to fifty-eight hours worked per week. Dkt. No. 84-1 at ¶ 10. For the month of December 2012 only, Defendants

---

[4] In her affidavit, Pelgrift testified that she worked "between seventy (70) and ninety (90) hours per week during the first ten (10) months of [her] employment as an Events Manager and thereafter around fifty (50) and seventy (70) hours per week." D.E. 84-1, at ¶ 7. This statement merely serves to demonstrate a general range of the number of hours that Defendants required Plaintiff Pelgrift to work per week and should not contradict other statements that Pelgrift articulated in her affidavit regarding her hours worked per week throughout her employment with Defendants.

compensated Plaintiff Pelgrift a flat monthly sum of $1,000.00 for that month, or $230.77 per week[5]. As for the remaining period from November 2012 until February 7,2014, Dkt. No. 84-1 at ¶ 13, Defendants paid Plaintiff Pelgrift the following: nothing in November 2012; $700.00 per week from January 2013 until March 16, 2013; $350.00 per week and ten percent commission whenever Defendants earned at least $2,000.00 per night or $400.00 (during this time period, Defendants earned at least $2,000.00 two days a week), with a total of $750.00 per week from March 17, 2013 until July 22, 2013; $300.00 per event and ten percent commission whenever Defendants earned at least $1,500.00 per night (during this time period, Plaintiffs booked three events a week, Defendants earned at least $1,500.00 two days a week and $2,000.00 three days a week), with a total of $1,800.00 from July 28, 2013 until November 2013; $1,550.00 per month, or $357.69 per week, ten percent commission whenever Defendants earned at least $1,500.00 (during this time period, Defendants earned $1,500.00 one day a week and $2,000.00 two days a week), or $907.69 per week from December 2013 until February 7, 2014. Dkt. No. 84-1 at ¶¶ 13-14-25.  As such, Plaintiff Pelgrift's damages for Defendants' overtime violations are as follows:

- Plaintiff Pelgrift's Actual Minimum Wage violations from October 21, 2012 until October 31, 2012

  o   Plaintiff Pelgrift's Regular Rate of Pay: $3.89/hour
  o   NYLL Minimum Wage Rate: $7.25/hour
  o   Difference Between Rates: $3.36/hour
  o   Plaintiff Pelgrift's Hours per Week: 36 hours
  o   Number of Weeks Worked: 1 week
  o   Plaintiff Pelgrift's Actual Damages: $120.96 ($3.36 x 36 x 1)

- Plaintiff Pelgrift's Actual Damages from November 1, 2012 until November 30, 2012

  **Minimum Wage**

  o   Plaintiff Pelgrift's Regular Rate of Pay: $0 per hour

---

[5] $1,000.00 times 12 months equals $12,000.00.  Divide $12,000.00 by 52 weeks, which equals $230.77 per week.

- o     NYLL Minimum Wage Rate: $7.25/hour
- o     Difference Between Rates: $7.25/hour
- o     Plaintiff Pelgrift's Regular Hours per Week: 40 hours
- o     Number of Weeks Worked: 4 weeks
- o     Plaintiff Pelgrift's Actual Minimum Damages: $1,160.00 ($7.25 x 40 x 4)

**Overtime Wages**

- o     Plaintiff Pelgrift's Regular Rate of Pay/Minimum wage (whichever is greater):  $7.25/hour
- o     Plaintiff's Overtime Rate of Pay: $10.88/per hour
- o     Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 26 hours
- o     Number of Weeks Worked: 4 weeks
- o     Plaintiff Pelgrift's Actual Overtime Damages: $1,131.52 ($10.88 x 26 x 4)

- • Plaintiff Pelgrift's Actual Damages from December 1, 2012 until December 31, 2012

**Minimum Wage**

- o     Plaintiff Pelgrift's Regular Rate of Pay: $5.77 per hour
- o     NYLL Minimum Wage Rate: $7.25/hour
- o     Difference Between Rates: $1.48/hour
- o     Plaintiff Pelgrift's Regular Hours per Week: 40 hours
- o     Number of Weeks Worked: 4 weeks
- o     Plaintiff Pelgrift's Actual Minimum Damages: $236.80 ($1.48 x 40 x 4)

**Overtime Wages**

- o     Plaintiff Pelgrift's Regular Rate of Pay/Minimum wage (whichever is greater):  $7.25/hour
- o     Plaintiff's Overtime Rate of Pay: $10.88/per hour
- o     Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 42 hours
- o     Number of Weeks Worked: 4 weeks
- o     Plaintiff Pelgrift's Actual Overtime Damages: $1,827.84 ($10.88 x 42 x 4)

- • Plaintiff Pelgrift's Actual Overtime Damages from January 1, 2013 until March 6, 2013

- o     Plaintiff Pelgrift's Regular Rate of Pay:  $17.50/hour

- o   Plaintiff's Overtime Rate of Pay: $26.25/per hour
- o   Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 26 hours
- o   Number of Weeks Worked: 10 weeks
- o   Plaintiff Pelgrift's Actual Overtime Damages: $6,825.00 ($26.25 x 26 x 10)

- Plaintiff Pelgrift's Actual Overtime Damages from March 17, 2013 until July 22, 2013

  - o   Plaintiff Pelgrift's Regular Rate of Pay:  $11.36/hour
  - o   Plaintiff's Overtime Rate of Pay: $17.04/per hour
  - o   Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 26 hours
  - o   Number of Weeks Worked: 18 weeks
  - o   Plaintiff Pelgrift's Actual Overtime Damages: $7,974.72 ($17.04 x 26 x 18)

- Plaintiff Pelgrift's Actual Overtime Damages from July 28, 2013 until November 30, 2013

  - o   Plaintiff Pelgrift's Regular Rate of Pay:  $27.27/hour
  - o   Plaintiff's Overtime Rate of Pay: $40.91/per hour
  - o   Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 26 hours
  - o   Number of Weeks Worked: 18 weeks
  - o   Plaintiff Pelgrift's Actual Overtime Damages: $19,145.88 ($40.91 x 26 x 18)

- Plaintiff Pelgrift's Actual Overtime Damages from December 1, 2013 until December 31, 2013

  - o   Plaintiff Pelgrift's Regular Rate of Pay:  $15.65/hour
  - o   Plaintiff's Overtime Rate of Pay: $23.48/per hour
  - o   Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 18 hours
  - o   Number of Weeks Worked: 4 weeks
  - o   Plaintiff Pelgrift's Actual Overtime Damages: $1,690.56 ($23.48 x 42 x 4)

- Plaintiff Pelgrift's Actual Overtime Damages from January 1, 2014 until February 7, 2014

  - o   Plaintiff Pelgrift's Regular Rate of Pay:  $13.75/hour
  - o   Plaintiff's Overtime Rate of Pay: $20.63/per hour

14

- ○ Plaintiff Pelgrift's Uncompensated Overtime Hours per Week: 26 hours
- ○ Number of Weeks Worked: 5 weeks
- ○ Plaintiff Pelgrift's Actual Overtime Damages: $2,681.90 ($20.63 x 26 x 5)

Plaintiff Pelgrift respectfully requests a total of $41,277.42 ($1,131.52 + $1,827.84 + $6,825.00 + $7,974.72 + $19,145.88 + $1,690.56 + $2,681.90) in actual overtime damages and $1,517.76 ($120.96 + $1,160.00 + $236.80) in actual minimum wage damages for Defendants' violations for the overtime and minimum wage provisions of the FLSA and the NYLL.

Hence, contrary to Judge Fox's recommendation, Plaintiff Pelgrift is entitled to liquidated damages under the FLSA/NYLL as she has established that Defendants are liable under the FLSA/NYLL for their failure to pay her the statutorily-required minimum and overtime wages throughout her employment.  Indeed, Plaintiff Pelgrift is entitled to liquidated damages under the NYLL as Defendants defaulted in the matter. *See, e.g.*, *Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 2016 U.S. Dist. LEXIS 121259 (S.D.N.Y. Sep. 8, 2016) ("By virtue of their default, the Defaulting Defendants' wage-and-hour violations are considered to have been willful and not committed in good faith."); *Elisama v. Ghzali Gourmet Deli, Inc.*, 2016 U.S. Dist. LEXIS 58833, at *37 (S.D.N.Y. April 29, 2016) ("[G]iven Defendants' default, they have not met their burden of proving that they acted in good faith, and thus liquidated damages are available under the provisions of the [FLSA and NYLL].").  As such, Pelgrift seeks $41,277.42 in liquidated overtime damages and $1,517.76 in liquidated minimum wage damages under the NYLL.

### B.   *Plaintiff Kolisnyk*

Plaintiff Kolisnyk worked for Defendants from February 12, 2013 until April 12, 2014. Dkt. No. 84-16 at ¶¶ 3, 21.  Throughout her employment, Defendants required Kolisnyk to work eight-hour or nine-hour shifts for three to four days a week, or thirty-six hours per week. Dkt. No.

84-16 at ¶¶ 4, 6.  From February 12, 2013 until March 31, 2014, in exchange for her hours worked, Defendants paid Plaintiff $35.00 per shift and tips, or $140.00 per week. Dkt. No. 84-16 at ¶ 4. From April 1 until April 12, 2014, in exchange for her hours worked, Defendants paid Plaintiff $50.00 at the conclusion of her shift, or $200.00 per week. Dkt. No. 84-16 at ¶ 6.  As such, Plaintiff Kolisnyk's damages for Defendants' minimum wage violations are as follows:

- Plaintiff Kolisnyk's Actual Minimum Wage Violations from February 12, 2013 until December 30, 2013

    o   Plaintiff Kolisnyk's Regular Rate of Pay: $3.89/hour
    o   NYLL Minimum Wage Rate: $7.25/hour
    o   Difference Between Rates: $3.36/hour
    o   Plaintiff Kolisnyk's Hours per Week: 36 hours
    o   Number of Weeks Worked: 46 weeks
    o   Plaintiff Kolisnyk's Actual Damages: $5,564.16 ($3.36 x 36 x 46)

- Plaintiff Kolisnyk's Actual Minimum Wage Violations from December 31, 2013 until March 31, 2014

    o   Plaintiff Kolisnyk's Regular Rate of Pay: $3.89/hour
    o   NYLL Minimum Wage Rate: $8.00/hour[6]
    o   Difference Between Rates: $4.11
    o   Plaintiff Kolisnyk's Hours per Week: 36 hours
    o   Number of Weeks Worked: 13 weeks
    o   Plaintiff Kolisnyk's Actual Damages: $1,923.48 ($4.11 x 36 x 13)

- Plaintiff Kolisnyk's Actual Minimum Wage Violations from April 1, 2014 until April 12, 2014

    o   Plaintiff Kolisnyk's Regular Rate of Pay: $5.56/hour
    o   NYLL Minimum Wage Rate: $8.00/hour
    o   Difference Between Rates: $2.44
    o   Plaintiff Kolisnyk's Hours per Week: 36 hours
    o   Number of Weeks Worked: 2 weeks
    o   Plaintiff Kolisnyk's Actual Damages: $175.68 ($2.44 x 36 x 2)

---

[6] This rate exceeds the applicable FLSA minimum wage rate.

Therefore, Plaintiff Kolisnyk respectfully requests a total of $7,663.32 ($5,564.16 + $1,923.48 + $175.68) in actual damages for Defendants' violations of the minimum wage provisions of the FLSA and the NYLL.

As with Plaintiff Pelgrift, Plaintiff Kolisnyk is also entitled to liquidated damages under the FLSA/NYLL as she has established that Defendants are liable under the FLSA and NYLL for their failure to pay her the statutorily-required minimum wages throughout her employment. Plaintiff Kolisnyk is entitled to liquidated damages under the FLSA/NYLL as Defendants defaulted in the matter. As such, Plaintiff Kolisnyk seeks $7,663.32 in liquidated damages under the NYLL.

## IV.   Proof of Mitigation is Immaterial as Defendants Forfeited the Affirmative Defense of Mitigation of Damages by Defaulting

With respect to Plaintiff Pelgrift's proof of mitigation, which was attached as Exhibit 4, Judge Fox averred that Plaintiff Pelgrift did not refer to its content. Judge Fox also noted that Plaintiff Kolisnyk did not refer to or explain numerous pages contained in Exhibits 14 and 17, which were Plaintiff Kolisny's proof that she mitigated her damages. As for Plaintiff Lutsenko, Judge Fox also scrutinized Exhibit 26, which served as proof that Lutsenko mitigated her damages. Even if Your Honor accepts Judge Fox recommendation, which ostensibly seems to be a recommendation that the Court disregard such exhibits, such proof of mitigation is immaterial in the case at bar as Defendants **defaulted**. *Laboy v. Office Equip. & Supply Corp.*, 2016 U.S. Dist. LEXIS 134787, at *28, n.16 (S.D.N.Y. September 29, 2016) ("[F]ailure to mitigate is an affirmative defense that defendants have forfeited by defaulting."); *Morgenstern v. County of Nassau*, 2009 U.S. Dist. LEXIS 116602, at *4 (E.D.N.Y. Dec. 15, 2009) (rejecting defendants' argument that mitigation is an affirmative defense to liability, not damages, and therefore finding that defendants waived their right to argue mitigation on the issue of damages).

Therefore, Plaintiffs respectfully request that the Court deem the issue of mitigation of damages immaterial due to Defendants' default.  Accordingly, Plaintiffs' lost and front wages, immaterial of mitigation, are the following: Plaintiff Pelgfit is entitled to $179,722.62[7] for lost wages and $94,399.76[8] for front pages; Plaintiff Kolisnyk is entitled to $37,800.00[9] for lost wages and $20,800.00[10] for front wages; and Plaintiff Lutsenko is entitled to $27,860.00[11] for lost wages and $14,560.00[12] for front pay.

## V.     Plaintiffs Provided Sufficient Evidence to Support their Damages Calculations with Respect to their Emotional Distress Damages

Judge Fox stated that despite Plaintiff Pelgrift's affidavit, which asserted that: "(1) she felt and continues to feel offended, disturbed, and humiliated by the sexual harassment and unlawful

---

[7] Pelgrift arrived at this figure by multiplying her last weekly pay prior to the end of her employment, which was $907.69 per week, by the number of weeks from the day after the end of her employment, which was February 8, 2014, through the date of the default judgment in this case, which was November 27, 2017, or by 198 weeks.

[8] Pelgrift arrived at this figure by multiplying her last weekly pay prior to the end of her employment, which was $907.69 per week, by the number of weeks from the date of judgment, which was November 27, 2017, through November 29, 2019, or by 104 weeks, which represents the two-year front pay that Pelgrift seeks.

[9] Kolisnyk arrived at this figure by multiplying her last weekly pay prior to the end of her employment, which was $200.00 per week, by the number of weeks from the day after the end of her employment, which was April 13, 2014, through the date of the default judgment in this case, which was November 27, 2017, or by 189 weeks.

[10] Kolisnyk arrived at this figure by multiplying her last weekly pay prior to the end of her employment, which was $200.00 per week, by the number of weeks from the date of judgment, which was November 27, 2017, through November 27, 2019, or by 104 weeks, which represents the two-year front pay that Kolisnyk seeks.

[11] Lutsenko arrived at this figure by multiplying her last weekly pay prior to the end of her employment, which was $104.00 per week, by the number of weeks from the day after the end of her employment, which was February 1, 2014, through the date of the default judgment in this case, which was November 27, 2017, or by 199 weeks.

[12] Lutsenko arrived at this figure by multiplying her last weekly pay prior to the end of her employment, which was $104.00 per week, by the number of weeks from the date of judgment, which was November 27, 2017, through November 27, 2019, or by 104 weeks, which represents the two-year front pay that Lutsenko seeks.

discrimination, where Defendants, both directly via text messages and phone calls, and indirectly through third parties, have repeatedly attempted to contact me"; (2) she feels depressed and avoids certain areas of New York City for fear of bumping into Defendant SHEERAN"; (3) she has "been meditating regularly in an attempt to handle the emotional distress caused by Defendants," Pelgrift provided no admissible evidence in support of her emotional distress and mental health injuries. Dkt. No. 92 at 31. Additionally, Judge Fox contended that "[o]ther than making conclusory assertions of feeling 'offended, disturbed, and humiliated,' and 'depressed,' Pelgrift did not present any evidence detailing the extent and severity of her emotional injuries or medical or psychological treatment." *Id.* Judge Fox articulated the same or similar criticisms of Plaintiffs Kolisnyk's and Lutsenko's evidence supporting their emotional distress damages. As a result, Judge Fox recommended to reduce Pelgrift's emotional distress damages from $125,000.00 to $10,000.00; Kolisnyk's emotional distress damages from $250,000.00 to $20,000.00; and Lutsenko's emotional distress damages from $125,000.00 to $20,000.00.

Contrary to Judge Fox's point, "[c]ourts in this Circuit have routinely found that awards ranging from $100,000 to $500,000 are not excessive for significant emotional distress damages." *See Leo v. Long Island R.R.*, 307 F.R.D. 314, 342, n.57 (S.D.N.Y. 2015) (citation omitted); *see Thorsen v. County of Nassau*, 722 F. Supp. 2d 277, 292 (2d Cir. 2010) ("Significant emotional distress claims differ from the garden-variety claims in that they are based on more substantial harm or more offensive conduct, are sometimes supported by medical testimony and evidence, evidence of treatment by a healthcare professional and/or medication, and testimony from other, corroborating witnesses."). As such, Plaintiffs' proffered evidence, further buttressed by Dr. Reich's objective medical testimony for each Plaintiff, support their requested damages for emotional distress.

**VI.    Plaintiffs Provided Sufficient Evidence to Support their Damages Calculations with Respect to Punitive Damages**

As for Plaintiffs' punitive damges, Judge Fox, without providing any basis, recommended to reduce Pelgrift's punitive damages from $250,000.00 to $10,000.00; Kolisnyk's punitive damages from $250,000.00 to $20,000.00; and Lutsenko's punitive damages from $250,000.00 to $20,000.00.    Plaintiffs respectfully request the Court reject Judge Fox's recommendation as Plaintiffs have provided sufficient evidence, in part, through Plaintiffs' affidavits that described Defendants violations of Title VII and NYCHRL, to support their entitlement to their requested punitive damages. *See Gutierrez v. Taxi Club Mgmt.*, 2018 U.S. Dist. LEXIS 106808, at *30-31 (E.D.N.Y. June 25, 2018) (recommending an award of $850,000 in punitive damages under Title VII and the NYCHRL); *Shukla v. Sharma*, 2012 U.S. Dist. LEXIS 18392 (E.D.N.Y. Feb. 14, 2012) at *47-48 (awarding $1,000,000 in punitive damages against three defendants: $250,000, $250,000, and $500,000).    The willfulness of Defendants conduct is further supported by their unwillingness to even participate in discovery to answer for their wrongdoings.

**VII.    The Requested Hourly Rates for Plaintiffs' Counsel are Reasonable**

Judge Fox stated that Plaintiffs' counsel failed to establish that the requested hourly rates are reasonable.    Plaintiffs requested these hourly rates for the following attorneys: (1) $500 for Ms. Marjorie Mesidor; (2) $350 for Ms. Nicole Welch, Dorina Cela, and Brittany Stevens; and (3) $250 for Ms. Yusha Hiraman.    "In determining reasonable hourly rates, the Court must consider the range of rates plaintiff's counsel actually charge their clients.   This is obviously strong evidence of what the market will bear." *Lora v. J.V. Car Wash, Ltd.*, 2015 U.S. Dist. LEXIS 99444, at *20 (S.D.N.Y. July 24, 2015) (citations and internal quotations omitted).    Indeed, the requested rates are the amounts that the above-referenced attorneys actually charge their hourly-paying clients in certain employment matters.    Additionally, Ms. Mesidor's $500.00 hourly rate is reasonable in

light of her fourteen-year trial experience in civil litigation, which includes significant experience in employment law. *See Guallpa v. NY Pro Signs Inc*., 2014 U.S. Dist. LEXIS 77033, at *28-29 (S.D.N.Y. May 27, 2014) (awarding $500 hourly rate to a partner with twelve years of experience); *Johnson v. Strive E. Harlem Empl. Grp*., *Johnson v. Strive E. Harlem Empl. Group*, 2014 U.S. Dist. LEXIS 10342, at *3 (S.D.N.Y. Jan. 28, 2014) (awarding Ms. Mesidor $400 an hour back in January 2014).  Additionally, the requested hourly rates for Ms. Welch, Cela, and Stevens, each of whom has at least four years of civil litigation in employment law, are also reasonable. *See Calle v. NDG Coffee Shop, Inc*., 2018 U.S. Dist. LEXIS 62979, at *4-5 (S.D.N.Y. April 12, 2018) (finding reasonable the hourly rate of $375 for attorneys with five years of experience in civil litigation, including wage and hour cases); *Dimopoulou v. First Unum Life Ins. Co*., 2017 U.S. Dist. LEXIS 15944, at *6 (S.D.N.Y. February 3, 2017) ("In this district, the range of awarded rates for associates with approximately five years of experience has been between $250 and $350) (citations omitted).  As for Ms. Hiraman, Plaintiffs' counsel's requested an hourly rate in the amount of $250.00 which is also reasonable. *See Pakter v. New York City Dep't of Educ*., 2010 U.S. Dist. LEXIS 120398, at *3 (S.D.N.Y. Oct. 26, 2010), *report and recommendation adopted*, 2011 U.S. Dist. LEXIS 8813 (S.D.N.Y. Jan. 31, 2011) ("In the Southern District of New York, reasonable hourly rates for junior associates vary: (a) $275 for a junior associate at a well-regarded civil-rights law firm; (b) $250 for junior associates at a mid-size law firm specializing in civil rights employment law; (c) $225 for junior associates in their first-year of experience; and (d) $200 to a junior associate who was a first-year attorney during the bulk of the case."); *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (setting rate at $250 an hour for junior associates).

Therefore, Plaintiffs' counsel respectfully requests that the Court exercise its discretion and reject Judge Fox's recommendation to not award Plaintiffs their reasonable attorneys' fees and

instead, modify Judge Fox's report and recommendation to find that Plaintiffs' counsel's requested hourly rates are reasonable.

## VIII.   <u>Total Hours Spent Are Reasonable</u>

Judge Fox indicated that Plaintiffs' counsel failed to assert that Exhibit 29, which demonstrates, *inter alia*, the number of hours worked in the instant matter, contains contemporaneous time records or that it is derived from contemporaneous time records. Dkt. No. 92 at 40.   Contrary to Judge Fox's interpretation of Exhibit 29, Plaintiffs' counsel provided contemporaneous time records, which indicate for each attorney: the date, the hours expended for each task, and the nature of the work done. *See Jimenez v. KLB Foods, Inc.*, 2015 U.S. Dist. LEXIS 84370, at *11-12 (S.D.N.Y. June 29, 2015) ("Defendants provide no basis to believe that the time records submitted by Plaintiffs were not either contemporaneously prepared or based on contemporaneous records.").   Indeed, time records provided by the prevailing party need only provide sufficient detail to permit the court to accurately determine the reasonableness of the attorneys' fee application. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 U.S. Dist. LEXIS 82085, at *18-20 (S.D.N.Y. Apr. 18, 2008).   Judge Fox also pointed out that Plaintiffs' counsel failed to identify the total number of hours expended in the case by each attorney.   Admittedly a procedural misstep on Plaintiffs' counsel's part, Plaintiffs' counsel respectfully requests that the Court exercise its discretion in reviewing the amended time records with the total number of hours expended in the case by each attorney, with the total of 106.80 hours expended. *See* Exhibit A; *see Motorola, Inc. v. Abeckaser*, 2009 U.S. Dist. LEXIS 73594, at *3-7 (E.D.N.Y. Aug. 19, 2009) (taking into account the new evidence that plaintiff submitted with its objections and finding that plaintiff adequately explained issues with respect to the plaintiff's attorneys' time keeping entries, which led to the Court adopting in part and modifying in part the magistrate judge's R & R).

**IX.     Plaintiffs' Counsel Provided Basis for the Court to Determine Whether the Amount of Costs is Reasonable**

In essence, Judge Fox recommended the denial of costs to Plaintiffs because Judge Fox found that Plaintiffs' counsel did not describe or explain each category - - filing fees, depositions, expert witness fees, postage and delivery, process servers, transcriptions, and travel costs - - in the attorney declaration or memorandum of law.  Plaintiffs respectfully request that the Court reject Judge Fox's recommendation as the categories enumerated in Exhibit 30 are self-explanatory and are expenses typically awarded in litigation. *See Gortat v. Capala Bros.*, 2014 U.S. Dist. LEXIS 108077, at *34-35 (S.D.N.Y. June 4, 2014) ("[C]osts incurred for filing, service, transcription, translation, electronic research, photocopying, data processing, postage, travel, witness fees . . . [are] [e]xpenses . . . typically awarded to a prevailing party."); *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 515 (S.D.N.Y. 2011) (awarding the costs of deposition transcripts and interpreters who translated at depositions and court conferences in an FLSA action)

In response to Judge Fox's inquiry about Exhibit 30, each section had a subtotal on the "Amount" column and a running tally, as well as, a subtotal in the "Balance" column.  Therefore, the only numbers that should have been added up, are the amounts in the "Total" rows for each section.  These numbers were:

> (1)     2 Advanced Client Costs – Total: $400.00
> (2)     Depositions – Total: $150.00
> (3)     Expert Witness Fees – Total: $2,400.00
> (4)     Filing Fees with Secretary of State – Total: $400.00
> (5)     Local Counsel – Total: $3,221.80
> (6)     Postage and Delivery – Total: $180.16
> (7)     Process Servers – Total: $163.00
> (8)     Transcriptions – Total $250.00
> (9)     Transcripts – Total: $25.00
> (10)   Advanced Costs for Travel – Total: $23.00

These amounts calculated in total, lead to the declared costs of $6,852.96.

In sum, Plaintiffs request the following corrected damages:

Plaintiff Pelgrift:

>   Actual overtime damages under the FLSA/NYLL: $41,277.42
>   Liquidated overtime damages under the FLSA/NYLL: $41,277.42
>   Actual minimum wage damages under the FLSA/NYLL: $1,517.76
>   Liquidated overtime damages under the NYLL: $1,517.76
>   Lost wages: $179,722.62
>   Front pay: $94,399.76
>   Emotional distress: $125,000.00
>   Punitive damages: $250,000.00
>
>   Sub total: $734,712.74

Plaintiff Kolisnyk:

>   Actual minimum wage damages under the FLSA/NYLL: $7,663.32
>   Liquidated overtime damages under the FLSA/NYLL: $7,663.32
>   Lost wages: $37,800.00
>   Front pay: $20,800.00
>   Emotional distress: $250,000.00
>   Punitive damages: $250,000.00
>
>   Sub total: $573,926.64

Plaintiff Lutsenko:

>   Lost wages: $27,860.00
>   Front pay: $14,560.00
>   Emotional distress: $125,000.00
>   Punitive damages: $250,000.00
>
>   Sub total: $417,420.00

Attorneys' fees: $36,967.50

Costs: $6,852.96

TOTAL: $1,769,879.84

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court reject the Magistrate

Judge's Report and Recommendation in its entirety and exercise its discretion to modify the R &

R to award the damages that Plaintiffs request herein.

Dated: New York, New York
       July 17, 2018

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**

By:     /s/ Marjorie Mesidor_____
Marjorie Mesidor
Brittany A. Stevens
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
T: (212) 248-7431
F: (212) 901 - 2107
mmesidor@tpglaws.com
bstevens@tpglaws.com